JOHANNA GILLESPIE v. LUTHER BEECHER.

*Assault—Right to resist—Evidence—Surrender of lease—Possession.*

1. In an action for assault and battery all testimony leading up to the assault, which tends to explain the relation or the rights of the parties, is admissible.

2. An assault may be entirely lawful, as either excusable or justifiable, and it involves every attempt or offer, with force and violence, to do a corporal hurt to another. *Drew v. Comstock,* 57 Mich. 181.

3. Upon the termination of a lease the lessor is entitled in law to the possession of the leased premises, and has a right to enter peaceably into such possession, and the lessee has no right to remove him by force, and in so doing commits an unlawful assault, which the lessor has a right to resist by force sufficient to repel it, and, if he confines his resistance within these bounds, he cannot be made liable to the lessee in an action for assault and battery.

Error to Wayne. (Gartner, J.) Argued January 22, 1891. Decided April 24, 1891.

Case for assault and battery. Defendant brings error. Reversed. The facts are stated in the opinion.

*Henry M. Cheever* and *Luther S. Trowbridge,* for appellant.

*James H. Pound* and *D. A. Straker,* for plaintiff.

CHAMPLIN, C. J. This is an action for assault and battery, in which the plaintiff recovered damages in the court below to the amount of $2,500.

The declaration, which contains a single count, alleges:

"That said defendant heretofore, to wit, on the 30th day of August, 1888, with force and arms made an assault upon said plaintiff, and did beat and otherwise ill-treat said plaintiff, to wit, did attempt to strike said plaintiff

with a large stick in his hand, and did unlawfully take hold of said plaintiff, and did with great force and violence push said plaintiff away from him, while said plaintiff was endeavoring to rescue her husband from said defendant, who was about at said time to strike her (plaintiff's) husband with a stick, and other wrongs to the plaintiff did, against the peace and dignity of the people of the State of Michigan."

The testimony introduced upon the trial showed that defendant was the owner of the Globe Hotel, situated at the corner of Jefferson avenue and Brush street in the city of Detroit, with an entrance upon Brush street. There were 35 rooms in the hotel; and on or about March 8, 1888, under an arrangement entered into between plaintiff and her husband and Mr. Beecher, they entered into possession, and kept a hotel and boarding-house. The plaintiff's evidence tended to prove that on August 28, 1888, Mr. Gillespie paid Mr. Beecher in full for the rent due, and at about 9 o'clock on the morning of August 29 Mr. Beecher entered the office of the hotel, and told them he wanted possession of the place, and had brought men with him to put their things out; that they declined to yield possession, and plaintiff told him that the men must leave; that she went into the kitchen, and when she returned the men were gone, and Mr. Beecher sat in a chair in the office; that Mr. Gillespie told him if they had to move they would, but wanted until the next Monday to get a house to move into; that he went out to look for a house, and was gone until nearly noon; that when he returned Mr. Beecher was still there, and still insisted upon having possession and closing the house, and wanted to separate the furniture. It appeared from the testimony of plaintiff that the 35 rooms were furnished, and all of the furniture and carpets belonged to Mr. Beecher, except two loads. Plaintiff's testimony further tended to prove that in the afternoon her hus-

band went again in search of a house, and returned about 4 o'clock unsuccessful; that in the mean time Mr. Beecher had removed his chair, and placed it against the double doors of the front entrance, and sat down in it so as to prevent ingress or egress through such entrance; that at one time during the forenoon the plaintiff threw a wet dish-cloth in Mr. Beecher's face; that. in the afternoon, while Mr. Beecher was barricading the doors, she approached him, but he raised his cane in a threatening manner, and told her to keep away .at the peril of her life, or at her peril; that after that her child, then three months old, was taken sick, and she went to Mr. Beecher, and requested to be let out of the door, so she could go to the drug-store and get some medicine for her child, and informed him that it was sick, but he refused and pushed her away violently. She then made her exit by another way, and, returning to the front entrance, was prevented by Mr. Beecher from entering there. Mr. Beecher occupied his position_ at the door, preventing ingress and egress by that entrance, until about 9 o'clock in the evening. At this time two members of the Metropolitan police force had entered the office of the hotel through a vacant store leading from Jefferson avenue. Mr. and Mrs. Gillespie and others were present. Another member of the police force was stationed at the door, and a number of persons had collected about it. Mr. Demler, one of the policemen, testifies that Mr. Gillespie said—

"That Mr. Beecher had blockaded the door; that they had boarders who wanted to get in, and some wanted to go out, and could not get out. I said: 'Have you possession of this building?' He said: 'Yes.' I said: 'If I were in possession of this building I should remove him.'"

It appears from the testimony of plaintiff's witnesses

that Mr. and Mrs. Gillespie acted upon this advice. Mr.
Gillespie narrates what ensued as follows:

"I went and grabbed him like this, and said: 'You
are here long enough, and you will obstruct this door no
longer.' As I approached him he just rose up, and to
the best of my knowledge I grabbed him under the arms,
leaving his hands free. I just raised him up with all my
might with the chair; that was all I could do. Mrs.
Gillespie pulled the chair away, and in a moment Mr.
Ormerod pulled the chair from her, and she received the
blow that was intended for me, possibly, or rather for
her head, on her hand. It was all done quickly and
simultaneously, and the door was pushed right in.

" Q. At the time the door was pushed in, tell us what
became of you and Mr. Beecher.

" A. Well, I might say it was over, for just as soon as
I got him on his feet—of course he had to stand on his
feet—she had the chair away from him, and he was on
his feet with the cane up in this manner, and coming
right down on her head, and she got her two hands on
it, and with the crook part she pushed like this; and he
wrestled her around; jammed her up against the case.

" Q. After your wife took hold of the cane, you say he
wrestled?

"A. He tried to free the cane from her to use it.

"Q. Will you tell us what followed after that?

"A. Well, the officers interposed immediately, and
quieted every thing, and dispersed the crowd."

Mrs. Gillespie, the plaintiff, was asked to tell what
took place when the officers were there, and she testified
as follows:

"They told us they could not remove him; we would
have to remove him ourselves; to coax him away. Mr.
Gillespie went to remove him. As soon as he raised
him a little off the chair I saw he was not able to take
him. There was a little scuffle between them, and I went
over and took the chair from under him, and in a moment
it was taken out of my hand, and I kind of fell back
against the door. The door was forced in, and it kept
me from falling. As it was, he was shoved over against
the cigar-case, and I was also. I was shoved with my
back against the door. He was close up beside me, and

instantly he drew up his cane,—slipped it through his hand, and drew up his cane. I caught the hook end of it as it was coming down. I threw up my hands, and he shook me violently to get the cane away from me.

" *Q.* What did you do with the cane?

" *A.* I don't know anything more that happened, only just Mr. Demler giving a step towards me. I remember that, but I don't remember anything more.

" *Q.* Before that what, if anything, did he do with the cane? Did he have it down this way, or was it lying on the floor, or what was he doing with it?

" *A.* He never let it out of his hands at all while he sat there.

" *Q.* What did you catch it for,—why did you try to catch it?

" *A.* I would have got struck with it on the head if I had not.

" *Q.* Who was striking at you?

" *A.* Mr. Beecher."

The testimony shows without any doubt that both plaintiff and her husband requested Mr. Beecher to leave the premises before they attempted to remove him, but he declined to leave, asserting that their lease had expired, and that he was in possession, and intended to keep it.

It was the claim of Mr. Beecher, and he introduced testimony tending to substantiate it, that he had leased the hotel, and by far the largest part of the furniture, to Mr. and Mrs. Gillespie, which lease had expired on the day previous to the day on which the assault was alleged to have been committed, and that he then had an interview with Mr. and Mrs. Gillespie, which resulted in Mr. Gillespie's surrendering to him the premises, and that he then took possession, and put his watchman in possession; that it was agreed that on the next day at noon they should close the house, and they should separate out the furniture belonging to Mr. Gillespie, and that he should give him full possession on the next day, and that Gillespie might occupy the rooms they were in temporarily, and also store their furniture until they obtained a house

to remove to; that he went there the next morning and took along some men to assist the Gillespies in removing their furniture; that he went into the office, where he saw Mr. Gillespie, and told him that he had come to separate the furniture; that Mr. Gillespie requested him to wait a short time for him to go down town and collect a board-bill; that he consented, and took a seat in the office; that Mr. Gillespie returned about 11 o'clock, and requested a further delay until after dinner, to which he consented; that after dinner he asked Mr. Gillespie if he was ready to commence and carry out the agreement they had made the night before, and then Mr. Gillespie said he had seen his lawyer, and he had advised him that he could stay there a month or more; that he told Gillespie that he was badly advised, that they could not do that, and he said to them that the agreement they had made about closing the house must be carried out, and their things separated from his; that then Mr. and Mrs. Gillespie started to go up-stairs, and Mrs. Gillespie came rapidly down stairs and went behind the counter, and took all of the keys off from the board, and went back up stairs. He then took his station at the door, sitting in a chair with his back to the door.

He states what occurred about 9 o'clock in the evening as follows:

"Mrs. Gillespie and Mr. Gillespie came in one after the other through the dining-room door. Mrs. Gillespie went past the stairway, and then turned facing the windows in the doors looking onto Brush street, and came directly towards me, and apparently looking out, or desiring to look out, of the window. Mr. Gillespie came behind the counter, and at my left hand, and came towards me that way; and not knowing what they meant to do, and distrustful of them, I tried to keep an eye on both, more particularly on Mr. Gillespie. He threw his arms right around me. I was sitting in this way [illustrating]. As I was sitting there, he threw his arms

right around my body under my arms, and pulled me towards him, raising me at the same time. At the same time Mrs. Gillespie came up from this side, and took hold of the round of the chair with one hand, and took hold of my cane with the other, and lifted my cane and hand up at the same time, pulled the chair out from under me. And while I was in this condition the door was burst open, and the center door swung around against the three of us all together. The force of it struck against myself there. They both had hold of me, and we all three were swung against the counter,—that part of it where the desk is, on this end, the part that the glass cigar-case is on.

"*Q.* And she had hold of the cane at that time?

"*A.* She had hold of my cane at that time.

"*Q.* At the upper end?

"*A.* At this end, below my hand, and had hold of it here. I held on, and she was endeavoring to get it away from me, which lifted it up. This hand was crippled by the blow. When I saw she was anxious to get my cane away from me I let this hand down, and took hold below, and wrenched this hand around. I had hold below, and she had hold above, and that raised the cane up, while I was endeavoring to pull it away from her.

"*Q.* What next happened?

"*A.* The next was two or three officers close to us there. They said something to them about the matter; just what I don't remember; and there was quite a crowd."

The testimony in the case shows without contradiction that the rights of Gillespie under the lease had terminated. Mr. Gillespie himself testifies to a conversation between Mr. Beecher and himself on the morning of the 29th as follows:

"He said: 'The lease has expired.' I said: 'Even so, we want some time to get a place;' and he said: 'You must get out to-day. I want my place to-day. It is my property, and I want it to-day.' I said: 'If it is impossible to get out we cannot; but if it is possible, of course we will get out.'"

Mr. Beecher also testified that the reason he and his

men remained there after they were ordered out was that he was afraid that his property would be carried away by Mr. Gillespie. If it be true that the lease had expired, it follows that Mr. Beecher was not a trespasser upon the premises. So long as he committed no breach of the peace in entering upon his own property to regain possession, and so long as he could retain such possession without committing a breach of the peace, he had a right to remain in the hotel office. The testimony shows that Mr. Beecher was not keeping the plaintiff and her husband imprisoned by obstructing the passage by the front entrance. There were other ways of ingress and egress, and others had entered without difficulty, among them the members of the Metropolitan police.

What was said by Mr. Justice SHERWOOD, and concurred in by Mr. Justice CAMPBELL, in *Franck v. Wiegert*, 56 Mich. 474, applies equally well to the facts of this case. He said:

"If the defendant, at the time he entered into possession of the property, had the right to that possession, and he entered peaceably, such possession would be lawful, and neither the plaintiff nor her husband would have the right to forcibly put him out."

And as was said by Mr. Justice CAMPBELL in *Drew v. Comstock*, 57 Mich. 182:

"If defendant used his stick to defend himself from what seemed to him to be an assault, there was no wrong in doing so."

An analogous case is that of *Ayres v. Birtch*, 35 Mich. 501.

"Birtch sued Ayres in trespass for an assault and battery. The act complained of took place at a blacksmith shop leased by Birtch of Ayres, and occupied by the former at the time. The case made by Birtch was that Ayres came into the shop, and, being requested by him

to leave, refused to do so, whereupon, making use of no more force than was necessary, he proceeded to put him out, when Ayres struck him a severe blow with a whiffle-tree. Ayres, on the contrary, claimed that he went to the shop to prevent the carrying off by other parties of some iron which he had sold to Birtch, but the title to which he was to retain until it was paid for, which had not then been done; that Birtch assaulted him immediately on his entering the shop; and that the blow he struck was in resistance to this assault."

It was held that, if the facts were as claimed by defendant, they would constitute a complete defense, unless the force employed by Ayres in resisting the assault upon him was greater than was necessary to his own protection. And it was also held that, if Birtch made the first assault upon Ayres, and was not justified in law in so doing, the burden was upon him to show that the force employed by Ayres in resisting and defending his person was excessive.

We adhere to the principles enunciated in these cases, and the jury should have been instructed that, if they were satisfied from the testimony that the lease had terminated, Mr. Beecher was entitled in law to the possession of his premises, and that he had a right to enter peaceably into the possession thereof, and that plaintiff and her husband had no right to remove him by force; that in doing so they made an assault upon him that was unlawful, and he had a right to resist such assault by force sufficient to repel it, and, if he used no more force than was necessary to repel the assault, he would not be liable to the plaintiff in this action.

The circuit judge charged the jury as follows:

"It is claimed on the part of the defendant in this case that Mr. and Mrs. Gillespie agreed to surrender up to Mr. Beecher possession of the property. However, this was not done. Mr. Beecher went in there, according to the undisputed testimony, on the 29th day of

August. He went in there and sat down, and it is claimed on the part of the plaintiff that he interfered with their possession, and with their running the hotel; that he sat in front of the door, preventing people from coming in and going out. Now, gentlemen of the jury, the property had not been surrendered, and as a matter of law the defendant had no right to do that, and, if he did interfere with their possession in that way, they had the right, under the law, to use all lawful means to remove him. Now, it appears that after he had been there for some time—in fact it was undisputed—an attempt was made to remove him so as to obtain access to this door, to permit of people coming in and going out. However that may be, as far as his interfering with the possession is concerned, that cuts no figure in this case, except incidentally. This is not a suit for interfering with the possession, but for an assault and battery. And what I have said thus far is to make more plain to you the theory upon which this case has been submitted under the pleadings and the evidence and the claims of counsel. It is claimed by Mr. Beecher that when they attempted to remove him he merely resisted; that Mr. Gillespie took him around the body, and that Mrs. Gillespie took hold of the chair; and that whatever he did there was not an assault upon Mrs. Gillespie, but that he merely resisted. Now, if that is the fact,—that he merely resisted,—why that is an end to this case, and there could not be any recovery under the pleadings. But it is claimed by Mrs. Gillespie that an assault was committed upon her at that time; that Mr. Beecher raised his cane over her head, and brought it down,—or you will remember what the testimony is in that particular; that she took hold of it with both hands; that he meant to strike her. Now, it is for you to say what the fact. is. It is for you to say, from all the evidence in this case, as to whether an assault was committed or not. As I have said before, it is not for the interference with the property that a recovery can be had in this case, if it can be had at all, but it is based solely and absolutely upon the fact of an assault having been committed; and it is for you to say as to whether an assault has been committed or not. As I said a moment ago, if Mr. Beecher merely resisted their attempt to put him out, why then he was not guilty of an assault. On the other hand, if you find according to the theory of the plaintiff,

according to the testimony of Mrs. Gillespie,—and you will remember also the other testimony in the case,—that Mr. Beecher raised his cane, and attempted to strike her, why that, under the law, would constitute an assault. Now, the first question for you to determine—and that would be practically the only question, unless you should come to the question of damages—will be as to whether an assault was committed or not. If you find that the assault was committed, as claimed by the plaintiff in this case, why then you will have to consider the question of damages. On the other hand, if you are not satisfied from the evidence that an assault was committed, that is the end of the case, and your verdict will be not guilty."

Counsel for defendant requested the court to charge the jury as follows:

"1. If Gillespie surrendered possession of the premises on the 29th, or the morning of the 30th, of August, then Mr. Beecher had a legal right on the premises.

"2. If you believe that Mr. and Mrs. Gillespie first laid violent hands on Mr. Beecher to remove him from his chair, then they were the aggressors, and committed an assault, and Mr. Beecher had a right to resist them by force, and your verdict must be for the defendant.

"3. If the premises had been surrendered to Beecher on the 29th, then Gillespie and wife had no legal right on the premises on the 30th, except to remove their property."

The court declined to give each and every one of these requests, and to such refusal the defendant by his counsel excepted. Some portions of the charge as above given were excepted to, and errors are assigned on both. The defendant was entitled to have his instructions given substantially as requested. See *Stone v. Lahey*, 133 Mass. 426. The learned circuit judge, while recognizing the right of the defendant to resist an assault, failed to instruct the jury that defendant had a right, when assaulted by the plaintiff and her husband, to use all necessary means to overcome the assault, and to use sufficient force for that purpose; and it will be readily

seen that if Mr. Ayres in the case above quoted had a right to defend himself with a whiffletree, Mr. Beecher had an equal right to defend himself with his cane, if necessary; and the only question was, did he use more force than was necessary?—a fact which will not be seriously questioned if he had a right to defend himself at all.

Again, it is not perceived why, if, as the judge charged the jury, Gillespie and wife had a right under the law to use all lawful means to remove Mr. ·Beecher, he (Beecher) had a right to resist such means, and if he only resisted he would not be guilty of an assault. The right to resist includes all necessary and lawful means to make such resistance effectual, even to committing a battery upon the assaulting party. 1 Russ. Crimes (9th Amer. ed.), 1027. Here Gillespie not only assaulted Mr. Beecher, but forcibly seized his person, which is a battery; and his wife voluntarily took part in the affray The court confined the claimed assault of Mr. Beecher in too narrow limits. He told the jury that, if Mr. Beecher raised his cane and attempted to strike Mrs. Gillespie, that, under the law, would constitute an assault, and that was the only question practically for them to determine. As was pointed out in *Drew v. Comstock,* 57 Mich. 181:

"An assault may be entirely lawful, as either excusable or justifiable, and it involves every 'attempt or offer, with force and violence, to do a corporal hurt to another.'"

It was excusable or justifiable in this case if the lease had terminated, and Mr. Beecher entered peaceably, and remained there for the purpose of protecting his property and retaining possession. In such case his entry was lawful, and his remaining was lawful.

Upon the trial of the case many facts of an extraneous

character, having no bearing upon the issue to be tried, were brought into the case, mainly without objection. Some of this class of testimony was objected to, and the defendant's counsel complain that such testimony had the effect to prejudice the jury. As it is likely that upon a retrial, if such testimony is objected to, it will be excluded, it is needless to notice the errors assigned upon this class of testimony. The court was right, however, in admitting all testimony which led up to the assault, which tended to explain the relation or the rights of the parties.

The judgment will be reversed, and a new trial granted.

The other Justices concurred.