### MALONEY v. McALPIN.

(Supreme Court, Appellate Term, First Department. May 7, 1914.)

1. ASSAULT AND BATTERY (§ 35*)—EVIDENCE—SUFFICIENCY.
    In an action for assault and battery, evidence *held* not to support a judgment for plaintiff.
    [Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. § 51; Dec. Dig. § 35.*]

2. ASSAULT AND BATTERY (§ 7*)—DISCHARGE OF SERVANT—FORCE IN EJECTING.
    A chambermaid has a reasonable time after the termination of her employment in which to depart from the premises, and where she remains thereafter she is a trespasser, and may be ejected by the use of proper force.
    [Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. § 4; Dec. Dig. § 7.*]

3. ASSAULT AND BATTERY (§ 39*) — PUNITIVE DAMAGES — EJECTION OF TRESPASSER.
    As a general rule, punitive damages for ejecting a trespasser are not recoverable, and in the event of the use of excessive force compensatory damages only may be awarded.
    [Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. § 54; Dec. Dig. § 39.*]

4. ASSAULT AND BATTERY (§ 43*)—EJECTION OF TRESPASSER—ALLOWANCE OF PUNITIVE DAMAGES.
    Where defendant, ejecting plaintiff, a trespasser, did not strike plaintiff, but merely grabbed her by the arm and shook her, a charge that the jury might allow punitive as well as compensatory damages was erroneous.
    [Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. §§ 57–59, 61, 62; Dec. Dig. § 43.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from City Court of New York, Trial Term.

Action by Winifred Maloney against Emma Rockefeller McAlpin, also known as Mrs. David Hunter McAlpin. From a judgment for plaintiff for $200, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued April term, 1914, before GUY, PAGE, and WHITAKER, JJ.

Pratt & McAlpin, of New York City (Herbert C. Smyth and Roderic Wellman, both of New York City, of counsel), for appellant.

Grauer & Rathkopf, of New York City (Ch. A. Rathkopf, of New York City, of counsel), for respondent.

WHITAKER, J. Plaintiff was in the employ of defendant as a chambermaid. She alleges that on September 19, 1912, at Morris Plains, N. J., the defendant for no justifiable cause assaulted, struck, and beat the plaintiff in the presence of several other persons; that as a result thereof plaintiff suffered severe shock to her nervous system, suffered pain, etc.

[1] The plaintiff's story in brief is as follows: She went to work for defendant in April, 1912, as chambermaid. On the 15th or 16th of September of the same year, plaintiff told Mrs. Atkins, who was the defendant's housekeeper, that she (plaintiff) desired to leave at the earliest possible time, and on the following day plaintiff requested Mrs. Atkins to let her go as soon as it was possible; that Mrs. Atkins informed plaintiff a week's notice was usual. Plaintiff agreed to stay a week. The next night, which would be September 17th, Mrs. Atkins told defendant she was to leave the next day on the train that left after 10 a. m., and she told plaintiff to go and pack as soon as she could. Plaintiff replied that she would go when she finished her work, but it had nothing to do with her, Mrs. Atkins; that on the 19th of September, plaintiff having been paid her wages, and having finished certain work she claims to have done, but which the testimony shows she was not required to do, and plaintiff having gone to her room to pack a few things, Mrs. Atkins came to plaintiff's room and asked plaintiff if she was ready, whereupon plaintiff replied that she would be ready in a minute, "but I am not going with you," meaning Mrs. Atkins, the housekeeper. Mrs. Atkins replied that she would see Mrs. McAlpin, the defendant. Mrs. McAlpin, the defendant, came to plaintiff's door and said plaintiff must get out of the house at once. Whereupon plaintiff told defendant that plaintiff would be ready in a few seconds, but that she would not go in the automobile. Defendant replied that plaintiff was to take the automobile, and to take her things and go, as plaintiff had been paid her wages some time before; that plaintiff went to the door of her room, when defendant grabbed plaintiff by the arm. Plaintiff said:

"I am ready to go, but not in the automobile."

Whereupon defendant called her butler and commanded him to put plaintiff out of the house; that the butler made a grab for plaintiff, but did not touch her, he "just laid his hand on" her arm; where-

upon defendant grabbed plaintiff by the arm, brought her downstairs, out into the hall, and said she would call her man in to force and tie plaintiff in the car. Then plaintiff, in her testimony, states as follows:

"So she (meaning defendant) grabbed my hand and called her man in; Nelson, the chauffeur. And Nelson refused to do anything. He said he would have nothing to do with it. The housekeeper still stood there. Then, after that, she said she would call her man to hold me in the car and tie me. I said: 'Mrs. McAlpin, you have humiliated me; so you are going to hear from me after.' I got in the front of the car, and when I got out of her premises I got out of the car and walked."

Plaintiff then went to the house of the mother-in-law of defendant's chauffeur, and the defendant's car returned later and took plaintiff to the train, a distance of about three miles from defendant's house. The chauffeur assisted plaintiff to check her trunk, etc. Plaintiff then went to New York.

This is, in brief, the story of plaintiff, and we think a most improbable one. According to the plaintiff and her counsel, one of the chief reasons for the alleged assault was the refusal of plaintiff to ride in the defendant's car. The whole case simply discloses an apparent, unappreciated solicitude upon the part of Mrs. McAlpin, the defendant, that plaintiff should not miss her train and should be comfortably conveyed to the station. It is not probable that defendant would assault plaintiff for simply refusing to ride in the automobile. Defendant was not required to transport plaintiff to the train. She would have been justified in putting both plaintiff and her baggage out of the house, upon the lapse of a reasonable time after the contract of employment had ceased, upon plaintiff's refusal to leave. There is no corroboration of plaintiff's most improbable story, which is materially weakened by her cross-examination, and all its essential details are flatly contradicted by one wholly disinterested witness, who was present during the whole time from the beginning to the end of the alleged assault, and also by two other witnesses, also disinterested, except that they are in the defendant's employ. The testimony of these three witnesses is plain, probable, simple, and unshaken in any of its details by cross-examination.

After a most careful reading of the testimony of all the witnesses, we are forced to the conclusion that the verdict is so manifestly contrary to the weight of the evidence that for that reason it should be reversed.

[2-4] There is still another reason why we feel constrained to reverse this judgment. The learned justice before whom the cause was tried charged the jury that under the evidence, if they found for the plaintiff, they might award "compensatory and also punitive damages." This, we think, was error, in view of the fact that it appeared by the evidence that the plaintiff had been paid her wages some time before the alleged assault occurred, and there is no proof that plaintiff did not have ample time to prepare for her orderly and comfortable departure. So far as the record discloses, plaintiff was at the time of the alleged assault a trespasser, and the evidence further shows that defendant did not strike the plaintiff, but grabbed her by

the arm and shook her. Taking her by the arm, if it occurred at all, would have been the proper and most excusable way of ejecting the plaintiff. But, be this as it may, there can be as a general rule no punitive damages for ejecting a trespasser. In such cases, where excessive force is used, compensatory damages only may be awarded. Kiff v. Youmans, 86 N. Y. 324, 40 Am. Rep. 543. Comparing the amount of the verdict with the insignificance of the injuries, the jury were evidently misled to the prejudice of defendant by this erroneous charge.

There are other reversible errors in the charge, which it is unnecessary to consider.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

PAGE, J., concurs. GUY, J., concurs in result.