William P. Hale, Appellee, v. Henry L. Harms, Appellant.

Gen. No. 8,405.

Opinion filed April 22, 1930.

WILLIAM F. SMITH and F. K. LEMON, for appellant.

L. O. WILLIAMS, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This was an action brought by appellee to recover damages for a malicious assault and battery charged. The declaration charged that appellant, on August 8, 1929, violently and maliciously struck appellee on the head with a shovel, cutting a large gash upon the head and causing appellee to fall and crumple to the ground and causing appellee great pain and suffering, together with other injuries and damage. Appellant filed a plea of not guilty and a second plea of *son assault demesne.* There was a trial by jury, a verdict and judgment against appellant in the sum of $1,822.50 in favor of appellee, and appellant has brought the record to this court, by appeal, for review.

Some complaint is made upon the rulings of the court in the admission and rejection of evidence, but upon a reading of the record in that connection we are of the opinion that appellant was not prejudiced by such rulings. As to the proofs, the entire case was tried upon the allegations set out in appellant's second plea, *son assault demesne,* and appellant testified:

I then pumped the water, and when I turned around to leave I saw my shovel laying there. I

picked up that shovel and was going to put it in the smokehouse, and when I picked up that shovel I saw my garden plow on the other side of the water trough, and I thought I would pick that up. When I went to pick up that plow Hale came up behind me and had a neck yoke in his hand, and said, "You lay that right down there, you God-damn son of a bitch; you have been bulling around here all summer. I am going to beat your God-damn brains out." I turned around and faced Mr. Hale and said, "This is my plow." He kept coming at me and said he was going to beat my brains out. I backed back, I would say, about three feet, and I thought I would leave and not have any trouble. I stopped. He still kept coming at me and I hit him with the shovel on the head. He fell. I stood there and watched to see that he wasn't hurt bad and then I turned around and walked out to the lot there and went out and helped unload the calf in the pasture.

Appellant further testified: When he hit him he fell. He did not fall straight down; he just kind of crumbled down. I stopped him. I didn't think I was going to hit him until I had to. When I made up my mind I aimed to hit him enough to stop him so he wouldn't hurt me. When he crumbled down I stood right there. I believe I stood there five minutes. His wife was not there then. She came out in the meantime. It was something like five minutes before she came out, but I don't know; it was long enough that I stood there until I saw that he wasn't hurt. He fell backwards. He was kind of sitting up when I saw him. He never did lie flat down. He was kind of sitting down and he was talking to me. I don't know what he said. He was not bleeding while I was there. He was sitting about five or six feet from me. I didn't see any blood.

Appellant was not corroborated in any of his testimony. In fact, his story is flatly contradicted by appellee, his daughter Virginia, a small child, and by the

conduct of appellee's wife. It is plain that the jury was compelled to accept one story and not the other. Appellee testified: At that time I was sitting on the little step that leads into the old kitchen door. When I first noticed Harms he was twenty-five or thirty yards south of the fence, at the road. The concrete walk leads out to the gate and the gate opens into the back lot, used as a barn lot. The steps to the west porch lead to the cob house. There is a fence on the south side of the yard. When I saw Mr. Harms, he came on to where there is an old hay rack that we have, with one end on the ground, used for piling anything on that we didn't have in use, forks, shovels or wire, anything, and he picked up a long handled shovel and he brought it on with him and brought it in the gate; he picked it up in the lot. He came on up on that porch. He came right up that south walk through that gate. He came facing me. When he came up there the children were playing on the concrete, my child and Mr. Perry's child. The child was around a year and a half old. Mr. Perry's child was about seven years old, going to school. Mr. Harms ran against and shoved that baby of mine off a little three-wheeled car, a kiddy car; it is a kind of a tricycle, three wheels with a handle, and he plays on that all the time, riding around. The child run to me, squalling, crying. I said, "Doc, that makes two or three times you have run against that baby," and I said, "There is no need of a man running against a baby that has any eyes." I said, "He isn't old enough to get out of your way." Harms had stepped out on the ground as near as that is to you; that is, about five or six feet. He said, "By God, hain't I on my own place?" I said, "I don't know if you are or not; you claim it. I don't care if it is, it don't give you any right to run over that baby." My wife stepped out and picked up the baby, and I was still standing there,

and took me by the arm and said, ''You come on in the house; there is no need of arguing with a man like that.'' I had just started to turn around and never said anything, and like a flash of lightning I felt something strike me on that side of my head. It left a scar near the top or right front lobe of my head. That is all I know that happened. I don't know what they done after that, or what was said. The next time I knew anything was some time that evening when I was on the bed.

The daughter Virginia testified: I remember the occasion of Mr. Harms coming there and he and my father having some trouble. At that time I was in the front room. When I heard them talking loud I came out to the kitchen door and saw Mr. Harms and my father talking. My father was standing on the edge of the porch and Mr. Harms on the ground down off the step at the end of the porch. I don't know what they said. My mother went outdoors and told my father to come in and took him by the right arm and picked up my baby brother and they turned to come in and just as they turned Mr. Harms hit my father over my mother's shoulder with a shovel. It was a round shovel with a long handle. It wasn't four feet long. Mr. Harms held the shovel and came back like this (indicating) and brought it around over one shoulder. He hit my father in the head and my father fell. Mr. Harms then run south and jumped over the gate, which was about fifteen or eighteen feet away. The gate is on hinges and swings. Mr. Harms did not open the gate. He jumped over it while he was running. He went out nearly to the barn. He run part of the way. He went down to the truck there and put his shovel in and went out to the field.

Appellant's plea confesses the assault charged, and from the proofs submitted the assault was wholly

malicious and unwarranted. That, apparently, was the view taken by the jury, and in that view we concur.

Appellant assigns error upon the refusal of the court to give certain instructions for appellant, but we find that the substance of all such instructions was covered by others.

Appellant also assigns error upon the giving of certain instructions for appellee. For example, appellee's first instruction, which is as follows:

"You are instructed that an assault and battery is the unlawful beating of another and you are further instructed that the least touching of the person of another in a rude, insolent or angry manner is a battery."

And appellee's seventh instruction: "The court instructs the jury in this case that if you believe from the evidence that the defendant assaulted and struck the plaintiff, as charged in the declaration, then, in order to find the defendant not guilty you must believe, from the evidence in the case, that the striking was done in necessary self-defense of the defendant."

Under the pleadings and proofs in this case both instructions stated the law correctly. The rule is, in an action of trespass for an assault and battery, where the defendant pleaded *son assault demesne,* with a replication *de injuria* by the plaintiff, an instruction which told the jury that under the pleadings in the case, the burden of proof was upon the defendant to establish, by a preponderance of the evidence, first, that the assault was made in necessary self-defense; second, that in making the assault, the defendant used no more force than was necessary to protect himself, was a correct statement of the law and a proper instruction. (*Gizler v. Witzel,* 82 Ill. 322, 326; *Reimenschneider v. Neusis,* 175 Ill. App. 172, 175; *Spenler v. Turley,* 158 Ill. App. 146; *Wells v. Englehart,* 118 Ill. App. 217, 219; *Swigart v. Ballou,* 106 Ill. App. 226,

227; *Hulse v. Tollman,* 49 Ill. App. 490, 497; *Chicago, R. I. & P. Ry. Co. v. Barrett,* 16 Ill. App. 17, 29.) By the plea of *son assault demesne* the defendant assumes the burden of proving not only that the plaintiff first assaulted him and that he, the defendant, acted in necessary self-defense, but also that in so defending himself he used no more force than was necessary. *Spenler v. Turley, supra.* And it is further held that in an action for assault and battery, on an issue taken on replication *de injuria* to a plea of *son assault demesne,* the burden is upon the defendant to prove that the assault was made in necessary self-defense, and that he used no more force than was necessary. (*Reimenschneider v. Neusis, supra; Wells v. Englehart, supra.*)

Finding no error in the record that will warrant a reversal of the judgment, the verdict and judgment of the circuit court of DeWitt county is affirmed.

*Affirmed.*