VAUGHN, Respondent, *v*. MESCH, Appellant.

(No. 7,821.)

(Submitted December 13, 1938. Decided January 18, 1939.)

[87 Pac. (2d) 177.]

*Mr. Frank E. Blair,* for Appellant, submitted an original and a supplemental brief, and argued the cause orally.

500

*Mr. John Collins,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action for damages for assault and battery. The jury returned a verdict for $130 actual damages and $1,870 punitive damages. Defendant's motion for new trial was denied and she appealed from the judgment entered on the verdict.

The evidence, viewed in the light most favorable to plaintiff, discloses that on June 1, 1936, plaintiff and her husband occupied certain property belonging to defendant as a residence, in which plaintiff's husband also conducted a barber-shop. Defendant on August 23, 1935, served notice upon plaintiff's husband to vacate the premises which at that time were held by him under lease. Plaintiff and her husband having refused to vacate the premises, an action for unlawful detainer was instituted by defendant against plaintiff's husband. That action was pending and undetermined on June 1, 1936.

Prior to June 1, defendant had rented to Charles Bell a cabin located near the house occupied by plaintiff and her husband; there was a toilet back of the cabin and a gate and driveway leading to the rear of the premises; the toilet, the gate and driveway were appurtenances to the cabin as well as to the buildings occupied by plaintiff and her husband. The entire premises were surrounded by a fence of which the gate constituted a part. Plaintiff and her husband claimed no right in the cabin; plaintiff's husband put a padlock on the toilet and on the gate; Bell was thus prevented from driving his truck in the yard and complained to defendant. On June 1, 1936, defendant sought assistance from town officers to remove the padlocks; failing in this, she and her brother, William Steiner, proceeded to do so by the use of a hammer and pliers; they removed the lock on the toilet and defendant started to remove the lock on the gate when her efforts were intercepted by plaintiff's husband. A struggle ensued; it gained momentum as it pro-

gressed; at first it was waged between plaintiff's husband and defendant. Plaintiff soon joined her husband, and defendant obtained assistance from her brother, William Steiner, then seventy years of age, who approached with an axe in his hand; a Mr. Gammel took the axe from Steiner. Eventually plaintiff's husband and Steiner became the principal participants in the encounter; bystanders intervened sufficiently to obstruct their efforts in part. A lull in activities found plaintiff's husband retiring from the conflict to take a seat on the back steps of the house occupied by himself and his wife as a residence. At this juncture Steiner shook his fist in the face of plaintiff and, according to some evidence, called her an opprobrious name and she retorted by slapping him in the face. Defendant then struck plaintiff on the head with a hammer causing the injuries complained of. Steiner withdrew and within a few minutes thereafter died. Plaintiff was carried to her home where medical care was administered.

The complaint described the injuries as follows:

"2. That the plaintiff was thereby rendered unconscious, her skull broken and crushed, her brain and nerves injured, her eyesight and hearing impaired, and other injuries about the head and body were inflicted upon her.

"3. That with the purpose of relieving the pain and suffering so caused, and of restoring her to a sound condition, the plaintiff has received competent medical and surgical treatment. That all of the services so received by plaintiff were necessary, and that such services will be required for an indefinite time in the future; by reason whereof the plaintiff has incurred and will incur a necessary and reasonable expense in the sum of $200.

"4. That by reason of the injuries so inflicted upon her, the plaintiff has been, and will permanently remain disabled from performing effectively her ordinary duties, which are that of housewife; and ever since receiving the same, and by reason thereof, she has suffered great physical and mental pain and nervous shock; and according to her best knowledge, information and belief, such suffering will continue throughout the remainder of her life."

502

Defendant contends that paragraphs 3 and 4 of the complaint ▮ above quoted are in the nature of special allegations which limit the general allegations contained in paragraph 2, and that in consequence it was error to permit evidence in support of the allegations of paragraph 2, except such as fall within the allegations of paragraphs 3 and 4. She also contends that the court erred in refusing her offered instruction confining the jury in the assessment of actual damages to those flowing from injuries based upon paragraphs 3 and 4 of the complaint, in exclusion of those alleged in paragraph 2, and in giving an instruction permitting the jury to consider injuries proven under paragraph 2 of the complaint. These contentions cannot be sustained. Paragraphs 3 and 4 do not limit the general allegations of paragraph 2. They merely allege consequences flowing from the injuries alleged generally in paragraph 2. The court's rulings were correct and in harmony with the holding of this court in *McCulloch* v. *Horton*, 105 Mont. 531, 74 Pac. (2d) 1, 114 A. L. R. 823.

The next contention of defendant is that the court erred in ▮ excluding the judgment roll in the case of *Mesch* v. *Vaughn*, which was the action of lawful detainer. Whether that judgment roll was admissible depends upon the issues made by the pleadings in this case and upon what was decided in that case. The complaint in this action alleges that defendant assaulted and struck plaintiff maliciously and without provocation. The answer contains an affirmative defense in which, after alleging ownership in defendant, it is alleged that plaintiff and her husband occupied the premises in question "without right, title or interest therein or thereto of whatsoever kind, nature or description and in absolute trespass of the plaintiff's said ownership, all over the protest and against the will and without the permission of the defendant herein."

The reply of plaintiff contains an affirmative plea that about the month of October, 1934, plaintiff's husband leased from defendant the premises in question for the full term of five years, and that at the time of the assault the lease was subsisting and in full force and effect. It is further alleged that in Novem-

ber, 1935, defendant commenced an action against plaintiff's husband to recover possession of the premises, and that in that action Vaughn made answer wherein he set forth the transactions between defendant and him in respect to his lease and right of possession, and that that action was still pending when the assault was committed.

Thus it will be seen that the pleadings in this case raised the issue as to whether plaintiff and her husband had any right of possession of the premises in question. Furthermore, Mr. Vaughn testified that he kept the rent paid during the time of the assault, and that the place of encounter was in his back yard which he had under lease. If defendant's version of the facts was true, then plaintiff and her husband were trespassers on the property. If plaintiff's version of the facts was correct, then plaintiff and her husband had a valid and subsisting lease on the premises. That this issue would influence jurors in the solution of the case cannot be questioned. Both parties thought that issue had a direct bearing upon the case, or else issues with respect thereto would not have been presented by the pleadings.

The judgment roll in the case of *Mesch* v. *Vaughn* discloses these facts: Plaintiff Mesch, who is defendant in this action, alleged in that action that defendant Vaughn had a month-to-month lease terminable at the will of plaintiff, defendant here; that the lease was terminated as of October 1, 1935, by giving notice to that effect in August, 1935; that complaint was filed in November, 1935, and sought restitution of the premises and treble damages. The answer in that action alleged that Vaughn had a lease for five full years, commencing October 15, 1934. The reply put in issue the allegations of the answer. The cause was tried to a jury, resulting in a verdict on April 7, 1937, for plaintiff, defendant here. The jury expressly found that the tenancy was from month to month. Judgment was entered on April 12, 1937, giving plaintiff, defendant here, immediate possession of the property, and awarding actual damages in the sum of $216, which was trebled. Thus it is seen that the terms of the lease were expressly adjudicated in that action. It was

expressly determined that the lease was from month to month, with the right in Mrs. Mesch to terminate it at will. It determined the rights of the parties as of October 1, 1935, and adjudicated the fact that plaintiff's husband had no right or interest in the property and no right to remain in possession thereof after October 1, 1935. While Mrs. Vaughn was not a ▮ party to that action, her right to possession was predicated upon that of her husband, and if he had none, she likewise had none. She has no more right to damages here than her husband would have had, had the assault complained of been committed upon him. (*Franck* v. *Wiegert*, 56 Mich. 472, 23 N. W. 172.)

While the judgment above referred to was not entered until in April, 1937, it established the rights of the parties as of October, 1935, prior to the time of the assault in question. The judgment should have been admitted in the present action as proof of the issues framed by the pleadings. The ownership and right of possession of the property were pertinent and material to be considered by the jury in determining whether there was any basis for an award of exemplary damages, and as tending to mitigate such damages. It was also material on the issue of actual damages because, if defendant had the right of possession she could use such force as was necessary to expel a trespasser, being responsible only for the injuries occasioned by the excessive force used. (*Walker* v. *Chanslor*, 153 Cal. 118, 94 Pac. 606, 17 L. R. A. (n. s.) 455, 126 Am. St. Rep. 61; see, also, *Low* v. *Elwell*, 121 Mass. 309, 23 Am. Rep. 272; *Sampson* v. *Henry*, 13 Pick. (Mass.) 36; *Ayres* v. *Birtch*, 35 Mich. 501.)

The admissibility of such a judgment obtained after the assault came before the supreme court of Michigan, in the case of *Franck* v. *Wiegert*, supra. The court was divided on the question of its admissibility. Justice Champlin took the view that it was not admissible, but did so apparently because the decree had been appealed from and reversed. But as we read his dissenting opinion, even he held the decree was admissible in mitigation of damages. Whether so or not, the majority of the court clearly held the judgment admissible, saying: "The

testimony, however, showing or tending to show what construction, if any, the parties themselves had put upon the contract, or of the judgment of a court of competent jurisdiction upon the rights of the parties themselves relating to the question of possession of the premises, was competent upon the issue made. The defendant does not claim adversely to the Francks, but as entitled to the possession under them. If the defendant, at the time he entered into possession of the property, had the right to that possession, and he entered peaceably, such possession would be lawful, and neither the plaintiff nor her husband would have the right to forcibly put him out; and such would be the case even if defendant had no deed, if he was entitled to a specific performance of the contract. In this case it became a question who had the right of possession at the time the assault was committed,—the defendant, or John C. Franck. The defendant had taken actual possession, and if his actual possession was fortified by the right thereto obtained by contract from John C. Franck, it is difficult to see under what rule of law he could be disturbed by the plaintiff. A deed from John C. Franck in such case could no more than confirm the right which already existed. It would not create the right, but only furnish the evidence of its existence, and a decree for specific performance could do no more. Such a conveyance or such a decree would, therefore, be competent evidence made at any time before the trial, if it would show the existence of the right in defendant at the time he made the entry; or if it would furnish a link in the chain of evidence tending to show that fact, it would in my judgment, be competent for that purpose. I understand such a decree was offered by defendant's counsel, and rejected by the court. This was error. I think, under the circumstances of this case, it should have been admitted for the reason stated." Here, so far as we know, no appeal was ever taken from the judgment in *Mesch* v. *Vaughn*. The question, then, for consideration is whether, in view of the erroneous exclusion of this evidence, we should remand the case for a new trial.

If in any view of the case which the jury might take, there would be room for an award of exemplary damages with this

evidence in the case, it would be our duty to remand the case for a new trial. However, if an award of exemplary damages were made with the excluded evidence considered, and if we would be obliged to set it aside as unwarranted on the record, then we would be justified in withdrawing that issue from the jury. There is some authority in support of the view that punitive damages for ejecting a trespasser are not recoverable even though excessive force is used. (*Maloney* v. *McAlpin*, (Sup.) 147 N. Y. Supp. 453; *Kiff* v. *Youmans*, 86 N. Y. 324, 40 Am. Rep. 543; *Livesey* v. *Stock*, 208 Cal. 315, 281 Pac. 70; and see cases discussed in the note in 16 A. L. R. 852, 855.) As against these authorities there are well-reasoned cases holding that the culpable use of excessive force is ground for awarding punitive damages even to a trespasser and to one who provokes the assault. Thus in *Nichols* v. *Brabazon*, 94 Wis. 549, 69 N. W. 342, the court in speaking on this question in a case where plaintiff herself provoked the assault, said: ''The appellant requested the court to charge that this 'was not a case where punitory damages could be allowed.' The court refused to so charge, but, on the contrary, charged, in effect, that this was a case where such damages could be allowed; that if they found that the appellant 'was actuated by a hatred or ill will towards the plaintiff, and that the assault, if any, was malicious, you may award the plaintiff such damages as, under the evidence, you think proper, by way of punishment to him for the assault.' Punitory damages have been allowed in this state, from a very early day, in cases where the injury was inflicted under circumstances of aggravation, insult, or cruelty, with vindictiveness or malice. (*McWilliams* v. *Bragg*, 3 Wis. 424.) Certainly, there was evidence from which the jury might reasonably have found this injury to have been inflicted from ill will and vindictiveness. The appellant's own testimony is sufficient to show this. His version of the matter is, 'She kicked me, and I struck her.' The blow was in retaliation for the kick. It was a vindictive blow, not necessary for his protection from any threatened or impending injury from her, but purely from vindictiveness. * * * It was not necessary, in order to warrant exemplary damages, that the blow should come from ill

will or vindictiveness, long harbored; and the present provocation was apparently too inconsequential to fully account for it as a sudden outburst of excusable passion."

In *Powell* v. *Meiers*, 54 N. D. 336, 209 N. W. 547, which was a case in which plaintiff struck the first blow, the court in holding that the question of punitive damages was properly for the jury, said: "Section 7145, C. L. 1913, authorizes the award of exemplary damages, in cases not arising on contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed. The malice necessary to justify the giving of punitory damages may be presumed from the wanton and reckless manner in which the battery was committed. (*Shoemaker* v. *Sonju,* 15 N. D. 518, 108 N. W. 42, 11 Ann. Cas. 1173.) Here the battery was accompanied by the use of insulting words. Upon the whole evidence we are satisfied that the jury here was justified in finding such reckless and wanton misconduct on the part of the defendant towards the plaintiff as warranted the inference of malice. It is urged by the defendant that no punitive damages may be awarded because the plaintiff provoked the assault and battery. It is a sound rule, and one which has been often applied, that exemplary damages are not recoverable where provocation furnished by the plaintiff affords a reasonable excuse for the assault. (5 C. J. 707.) It is equally well settled, however, that if the defendant 'uses excessive or unwarranted force in repelling the aggressor,' exemplary damages may be awarded. Id. In *Nichols* v. *Brabazon,* 94 Wis. 549, 69 N. W. 342, it appeared that the plaintiff, a woman, provoked the assault by kicking the defendant. The court held, notwithstanding, that the defendant retaliated with such unnecessary force and violence that punitory damages were properly allowed. (See, also, *Kelly* v. *Sanderson,* 204 Ill. App. 155.) We think the evidence in the case at bar supports the finding that, while there was excuse for a technical battery, the measures of reprisal adopted by the defendant were so disproportionate to the provocation as to permit the inference of malice, and support a verdict for punitory damages."

Punitive damages may be recovered in this state "where the defendant has been guilty of oppression, fraud, or malice, ac-

tual or presumed.'' (Sec. 8666, Rev. Codes.) Malice may be ''established either by proof or presumpion of law.'' (Subd. 4, sec. 10713, Rev. Codes.) It is difficult to define. (*Wray* v. *Great Falls Paper Co.,* 72 Mont. 461, 234 Pac. 486.) In an ▮ assault case wherein malice is alleged, as here, it is ''not the quantum of force but whether assailant was in a malicious state of mind'' that is the test in awarding exemplary damages. (*Hageman* v. *Arnold,* 79 Mont. 91, 254 Pac. 1070.) The use of a dangerous weapon is itself some evidence of a wanton disregard of human life (*Dickinson* v. *State,* 3 Okl. Cr. 151, 104 Pac. 923), and generally gives rise to the right of punitive damages. (See cases listed in note in 16 A. L. R., pp. 845–848.) Generally, the question of malice or no malice is for the jury. (*Miller Ins. Agency* v. *Home Fire & Marine Ins. Co.,* 100 Mont. 551, 51 Pac. (2d) 628.)

We are not able to say, as a matter of law, that there was no evidence of malice, sufficient to go to the jury. We hold, therefore, that a new trial should be granted because of the exclusion of the judgment roll in the case of *Mesch* v. *Vaughn.*

For the benefit of the parties and counsel upon a retrial we shall discuss further points. Numerous assignments of error were made relating to the admission and exclusion of other evidence. We shall not specifically refer to these because it is not likely that they will arise upon another trial.

Defendant complains that the court gave Instruction No. 3, ▮ reading: ''You are instructed that where a trespass is committed only against the property of another, not his dwelling house, it is not a provocation sufficient to warrant the owner in using a dangerous weapon; and if he do so, and with it inflict a dangerous wound upon the trespasser, this is an act of violence beyond the degree of the provocation, for the law does not justify the shedding of human blood to prevent slight injuries to the property of others.'' Language very similar to that contained in the instruction was quoted with apparent approval from the case of *Bush* v. *People,* 10 Colo. 566, 16 Pac. 290, in *State* v. *Smith,* 12 Mont. 378, 30 Pac. 679. The *Bush Case* had to do with a murder. The court referring to the ''shedding of human blood'' meant the taking of human life. Our statute

controls as to the amount of force that can be exerted against a trespasser (sec. 10980, Rev. Codes), or in defense of a relative (sec. 5694, Id.). Here it is fair to assume that the act of trespass or the injury to the property of the defendant by plaintiff and her husband may not have been as much the cause of the blow administered by defendant as was the fact that plaintiff had brutally slapped her aged brother. In any event, the jury should not be led to believe that any force sufficient to draw blood, as against a trespasser or against one who is inflicting a wrongful injury upon a relative, must be held to be excessive as a matter of law. That was the effect of the instruction complained of.

Defendant also complains of Instruction No. 4, reading: ''You are instructed that a person may resist a trespass on his property, not amounting to a felony, or interference with property not feloniously attempted, by the use of reasonable force, short of taking or endangering life; but if he is unable to prevent it, and there is no felony attempted, he must suffer the trespass and the interference and seek redress at the hands of the law, rather than to shed blood.''

Clark, in his work on Criminal Law, p. 145, states: ''A person may resist a trespass on his property, real or personal, not amounting to a felony, or removal or destruction of property not feloniously attempted, by the use of any reasonable or necessary force, short of taking or endangering life; but if he is unable to prevent it, and there is no felony attempted, he must suffer the trespass and the loss of property, and seek redress at the hand of the law, rather than commit a homicide.'' Instruction No. 4 was apparently prepared with this statement in view. What we have said regarding Instruction No. 3 relative to the shedding of human blood applies with equal force to this instruction.

Defendant also complains of the giving of Instruction No. 11, reading: ''Even though you believe that the plaintiff and her husband were unlawfully withholding from defendant the possession of the premises described in the testimony, and were unlawfully interfering with defendant's tenant in the use and enjoyment thereof, those facts alone would not justify the de-

fendant in assaulting the plaintiff with a dangerous weapon, if such assault were made.'' This instruction does not permit the defendant to use reasonable and necessary force as against a trespasser which the statute, section 10980, Rev. Codes, authorizes. The manner in which a dangerous weapon is used must be taken into account in determining whether the force was excessive. The instruction is objectionable in that it prohibits the use of a dangerous weapon no matter how or in what manner it was used, or however slight the injuries inflicted by it.

Defendant complains of Instruction No. 6, given by the court, reading: ''You are instructed that under her affirmative plea, the burden is upon the defendant to justify the means, as well as the amount of force, employed by her in her treatment of the plaintiff.'' This instruction was erroneous. Defendant did establish or would have done so if the excluded evidence had been admitted as it should have been, that plaintiff and her husband were trespassers upon the property. This being the case, she had a right to remove the padlocks from the toilet and gate; she was doing so in a lawful and peaceable manner when plaintiff and her husband interceded; at this point we deem it of but little importance as to who started the encounter. Defendant testified that Vaughn did so by endeavoring to get the tools from her which she was using to remove the padlock. Plaintiff's testimony tended to show that Vaughn tried to dissuade defendant from removing the padlock on the gate by word of mouth, and that defendant then started to strike him with a screw driver and he proceeded to take the tools from her. Plaintiff and Vaughn being trespassers had no right to undertake to take the tools from defendant or to stop her from removing the padlock. If defendant attacked Vaughn his duty was to retreat. Defendant's only obligation to plaintiff and her husband was not to use more force than was necessary to evict them from the premises. Plaintiff's right to recover must rest upon the ground that defendant used more force than was necessary; the burden of proving the means as well as the amount of force employed by defendant was on plaintiff.

This question was before the supreme court of Michigan, in *Ayres* v. *Birtch*, 35 Mich. 501, where the court said: "But we think counsel were correct in asking the court to hold that if Birtch made the first assault upon Ayres and was not justified in law in so doing, the burden was upon him to show that the force employed by Ayres in resisting and defending his person was excessive." This holding was reaffirmed in *Gillespie* v. *Beecher*, 85 Mich. 347, 48 N. W. 561, and in *Anders* v. *Clover*, 198 Mich. 763, 165 N. W. 640. The rule is elsewhere declared that the burden of proving excessive force is on plaintiff. (*Metzinger* v. *Perry*, 197 Wis. 16, 221 N. W. 418; *Fulton Inv. Co.* v. *Fraser*, 76 Colo. 125, 230 Pac. 600; *Finnell* v. *Bohannon*, 19 Ky. Law Rep. 1587, 44 S. W. 94.) There are cases taking the opposite view, of which *Barnett* v. *H. L. Green Co.*, 233 Ala. 453, 171 So. 911, *Hale* v. *Harms*, 257 Ill. App. 388, *McQuiggan* v. *Ladd*, 79 Vt. 90, 64 Atl. 503, 14 L. R. A. (n. s.) 689, and *Powell* v. *Meiers*, 54 N. D. 336, 209 N. W. 547, are illustrative.

We are aware that the burden of proof of self-defense is generally upon defendant. But where, as here, plaintiff was shown to have been a trespasser and that she and her husband acting jointly at least contributed to provoke the assault, the burden then shifted to plaintiff to prove that the force used by defendant was excessive.

Complaint is made of other instructions given and refused, but we find no merit in those contentions.

The judgment is reversed and the cause remanded with direction to grant defendant a new trial.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and STEWART concur.

Rehearing denied February 21, 1939.