[L. A. No. 10033. In Bank.—September 30, 1929.]

GEORGE LIVESEY, Respondent, v. HUGH E. STOCK, Appellant.

G. M. Spicer, W. I. Gilbert and Keyes & Erskine for Appellant.

Harry L. Cohn for Respondent.

PRESTON, J.—In this action the judgment was for plaintiff awarding actual and punitive damages growing out of an assault with a deadly weapon. The verdict was $5,000 actual and $50,000 exemplary damages. The court below, upon motion for a new trial, determined that unless the amount of such damages was remitted by the plaintiff to $750 as actual and $33,333.33 as punitive damages, a new trial should be ordered. Plaintiff remitted said excess sum, but the defendant has nevertheless appealed.

The first assignment of error requiring special consideration may be summed up in the words of defendant's counsel as follows: "The appellant was the owner and was in possession of real property. The respondent deliberately and wilfully, for the second time within a period of two days, was destroying the fence on appellant's property. Under the law the respondent was a trespasser and appellant had the right to use all necessary force to repel his unlawful trespass. The respondent cannot recover anything in this action unless he shows that unnecessary force was used to prevent the trespass, and then can only recover the actual damage resulting from the unnecessary force, and under the law he cannot recover exemplary damages."

The soundness of the proposition of law thus asserted can scarcely be doubted for the law is clear that a trespasser may be expelled from the premises of a land owner without incurring liability so long as unnecessary

force is not employed. (*Burnham* v. *Stone*, 101 Cal. 164, 171 [35 Pac. 627]; *Walker* v. *Chanslor*, 153 Cal. 118, 129 [126 Am. St. Rep. 61, 17 L. R. A. (N. S.) 455, 94 Pac. 606].) ■ It may also be conceded that there is little if any reason for awarding exemplary damages in favor of a trespasser upon the property of another who by reason of his own wrong is in part responsible for the force used. (*Kiff* v. *Youmans*, 86 N. Y. 324 [40 Am. Rep. 543].) But these principles of law are applicable solely upon the assumption that the plaintiff was a trespasser upon the property of the defendant. In this case the necessary finding of the jury was to the effect that plaintiff was not a trespasser upon the property of defendant at the time and place of the assault. The case in this aspect then resolves itself into one as to the sufficiency of the evidence to sustain this finding. A brief recital of the facts must precede our further consideration of this issue:

■ Defendant, a man of considerable wealth, owned on April 4, 1926, at the time in question, a block of land in Long Beach, California, situated on Ocean Avenue between Fifth and Sixth Place. The southern boundary line of this property for the purposes of this case may be considered to have been, as contended by appellant, the line of mean high tide of the Pacific Ocean. The tide lands of the ocean below the line of mean high tide within the city limits of Long Beach were by the legislature of California in 1911 (Stats. 1911, p. 1304) ceded to said city in trust for the purpose of developing same as a public harbor and to promote commerce and navigation, the state reserving to itself, however, the right of the public to fish in said ocean and the right of convenient access over said lands for said purpose. Previous to said above-mentioned date and for a considerable period of time there had existed a controversy between the city of Long Beach, acting principally for the purpose of preserving the beach for the public as a place of recreation, and a number of property owners of said city, of whom defendant was one, known as "Bluff owners," over the location of the line between their property and the line of mean high tide of said ocean. The public, too, made considerable use of the beach; resident men, women and children as well as guests frequented it; life-guards were kept in attendance upon it

and vehicles used for sanitary purposes traveled up and down this area. But some time prior to April 2, 1926, defendant, acting to better his position legally in his contention with the city, projected two barriers, called by some fences, one of which was an extension or projection of his east and the other of his west property line southward toward the ocean. He had also theretofore constructed a concrete bulkhead or retaining wall some distance north of the southerly boundary line of his property, but this wall did not connect with the extremities of these barriers and bore no relation thereto.

On April 2d, presumably at night, plaintiff removed what might be called one panel of said barriers by releasing the staples with which the woven wire fence was attached to the most southerly post of said barriers and laid back the portion of said wire extending from this post to the next post, a distance of some eight or ten feet. Defendant immediately caused said barriers to be reconstructed. On April 4, 1926, about 2 P. M., the day being Easter Sunday, plaintiff and other portions of the public were using or attempting to use said beach for recreation purposes and plaintiff, having theretofore procured a bar of iron, was engaged, while standing at said most southerly post of the so-called Fifth Place barrier, in releasing said staples holding said woven wire fence, for the purpose of repeating his said previous performance, when defendant, seeing him through the window of his home, seized a number twelve-gauge Winchester pump shotgun, two shells of three drams of powder each and one and one-eighth ounces of number eight shot; came out of his residence and a short distance down the walk leading therefrom and upon reaching a point some 200 feet from the place where plaintiff was standing, with said gun fired at him leaden pellets, several of which took effect, but worked no considerable injury. Plaintiff desisted for a moment and conferred with some other persons near him. Later he returned to the post and began the further execution of his purpose when defendant, who had approached within a distance of some 160 feet, fired a second shot, which also took effect. There was evidence also that defendant, approaching still closer, either leveled his gun or undertook to shoot plaintiff a third time, but the effort was a false one or else the gun failed to fire. As a result

of said shooting plaintiff received small wounds and some thirty-five or forty shots were extracted from his body by the physician.

The basis of defendant's contention is that on October 2, 1924, he had his property lines surveyed and had set stakes marking the line of mean high tide and the southeast and southwest corners of said property and that said fences or barriers terminated within this projected area. The evidence of plaintiff, however, showed that the post in question was at least seven feet south and oceanward from the line of mean high tide. This also was the logical deduction from the testimony of experts offered by defendant and it is not seriously controverted by him, but his theory in this behalf is that by reason of a sudden storm in February, 1926, the level of the sand on the beach at this point had been materially reduced, consequently causing the line of ordinary high tide to strike the beach at a point considerably to the north of where it formerly had been; hence what is known as the doctrine of avulsion should be applied under which he had the right to maintain his ownership at the old line as indicated by the said posts.

The authenticity of the claimed survey was not established by him. However, the court, under the most careful, liberal and specific instructions, submitted to the jury the issue as to whether or not the post in question and the position of plaintiff at the time of the shooting were within or without the boundary line of defendant's property. The court also specifically submitted under appropriate and elaborate instructions the doctrine of avulsion claimed by defendant to be applicable. Upon both these issues the jury returned a verdict against the contention of appellant and in favor of the contention of respondent. There being, as above pointed out, ample evidence to sustain this finding, application of the rule of trespass may not be invoked by appellant. ■ In other words, the evidence warranted the finding that plaintiff at the time and place in question was without the boundary line of defendant's property and upon the public domain and was there engaged in removing what must have been considered by the jury a public nuisance, which was not an unlawful act nor was it an invasion of any property right of defendant; hence the jury was well within its province in assessing actual damages and, we think, also in assessing exemplary damages.

■ Exemplary damages may be awarded where malice, fraud or oppression are present (sec. 3294, Civ. Code; *Davis* v. *Hearst*, 160 Cal. 143, 161 [116 Pac. 530]; *Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 367 [12 A. L. R. 1007, 184 Pac. 672]). It requires no argument to establish the fact that malice or oppression is present in a case where, within little more than fifty to sixty yards distant, a defendant deliberately shoots twice at another with a gun loaded with number eight shot. The evidence even warranted ·a finding of a third attempt within still closer range. This situation is not changed by the statement of defendant that he was firing at the small fence post at which plaintiff was standing.

■ The further claim is made that the court was without jurisdiction to proceed on the trial by reason of a void order directing the sheriff to summon a special venire of talesmen from which to select the jury. The court in this case, pursuant to a recent statute, sat in Long Beach as Department 28 of the Superior Court of Los Angeles County. No regular jury was in attendance. The court directed the sheriff to summon a special venire from Long Beach township instead of from the body of the county. Defendant moved to vacate the order, which motion was denied. Later he objected to going forward with the trial. But he declined to interpose a challenge to a single juror on this or any other ground.

■ The presence of illegality respecting the impaneling of a jury in the civil cause is never a jurisdictional question, but it is, at most, but error in the exercise thereof. (*Amos* v. *Superior Court*, 196 Cal. 677 [239 Pac. 317].) A challenge leveled at the panel is not contemplated by the statute in civil cases. The remedy allowed is a challenge to the individual juror. (Sec. 601, Code Civ. Proc.; *Estate of Wall*, 187 Cal. 50 [200 Pac. 929].)

The general objection here made to the panel amounted to no more than a challenge thereto. Moreover, the error was at most but technical, for under sections 204 and 206 of the Code of Civil Procedure, a regular panel for the Long Beach Superior Court would have consisted of persons selected "from the names of men and women residing within the township within which said city is located."

While sections 226 and 227 do not contain a similar provision, still directing the sheriff to remain in a given township while seeking a special venire, so long as they were not taken from bystanders, would seem to be a matter of small consequence.

The point that the jurors had each served upon a regular or special venire and had been discharged as such within one year, in violation of sections 199 and 200 of the Code of Civil Procedure, if true, fails by reason of defendant's omission to interpose a challenge on this or any other ground to a single juror. (*People* v. *Mortier,* 58 Cal. 262; *People* v. *McFarlane,* 138 Cal. 481 [61 L. R. A. 245, 71 Pac. 568, 72 Pac. 48]; *People* v. *Boren,* 139 Cal. 210 [72 Pac. 899].)

Notwithstanding the total absence of prejudicial error in the trial of this cause, we can reach no other conclusion upon this record than that the action of the jury was largely prompted by prejudice or passion. It is true that the trial court undertook to purge the verdict of excess damages due thereto, but, in our judgment, the excess is much greater than he found it to be. Any amount in excess of $750 as actual and $10,000 as punitive damages in our judgment can be ascribed to no other cause than passion or prejudice.

Our power to thus interpose our judgment has often been recognized where upon the record the amount of the verdict is so large as to suggest at first blush the existence of the above conditions. (*Phelps* v. *Cogswell,* 70 Cal. 201 [11 Pac. 628]; *Davis* v. *Southern Pac. Co.,* 98 Cal. 13 [32 Pac. 646]; *Simoneau* v. *Pacific Elec. R. Co.,* 166 Cal. 264, 277 [49 L. R. A. (N. S.) 737, 136 Pac. 544]; *Shaffer* v. *Arnaelsteen,* 54 Cal. App. 719, 728 [202 Pac. 946].)

A case might easily be supposed where the question of segregation might be so difficult that instead of suggesting a reduction, the cause would be remanded for a retrial generally or upon the issue of damages alone. (*Bond* v. *United R. R.,* 159 Cal. 270 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366]; *Morris* v. *Standard Oil Co.,* 188 Cal. 468, 473 [205 Pac. 1073].) But after a study of the whole record in this case and in view of its nature and the length of time it has been pending, we are

content to accept the responsibility of the above conclusion. The defendant was prosecuted criminally and allowed to receive a fine of $500 and a suspended sentence of six months. The plaintiff was to a certain extent active in provoking trouble and no reason exists for unduly compensating him. The amount of wealth of the defendant is also highly speculative.

Accordingly, the judgment is reversed and the cause remanded to the lower court for a new trial solely upon the issue of the amount of damages unless, within thirty days from the filing of the *remittitur* in the court below, plaintiff shall remit from the judgment all except the sum of $10,750 and the costs as at present adjudged therein, neither side to recover from the other costs on this appeal. If such remission be so made, then in that event, the judgment shall stand affirmed; otherwise it shall stand reversed and the cause shall be retried upon the issue of damages alone.

Richards, J., Seawell, J., Waste, C. J., Langdon, J., and Curtis, J., concurred.