[S. F. No. 15850.  In Bank.—July 26, 1938.]

BELVA BELLMAN, a Minor, etc., Respondent, v. SAN FRANCISCO HIGH SCHOOL DISTRICT, Appellant.

John J. O'Toole, City Attorney, Walter A. Dold, Chief Deputy City Attorney, and Irving G. Breyer for Appellant.

Everett W. Mattoon, County Counsel (Los Angeles), J. H. O'Connor, County Counsel (Los Angeles), and J. F. Moroney and S. V. O. Prichard, Deputies County Counsel, as *Amici Curiae,* on Behalf of Appellant.

James F. Brennan and Walter McGovern for Respondent.

THE COURT.—Because of the importance of the question a rehearing was granted in this case. Upon further consideration of the principles involved we are satisfied with the conclusions reached upon the previous hearing and we hereby adopt the opinion prepared at that time by Mr. Justice Edmonds as our opinion upon rehearing. It follows:

"While a student in the Polytechnic High School at San Francisco, Belva Bellman, a seventeen-year-old girl, sustained personal injuries while endeavoring to do, an exercise taught in the tumbling class which was conducted by the school as one of the courses in physical education. Through a guardian *ad litem* she brought suit against the San Francisco High School District and by the verdict of a jury was awarded damages in the sum of $15,000. A judgment was thereafter entered in her favor, and the school district has appealed from the judgment and from the order by which it was denied a new trial.

"The respondent was a student in the high sophomore class of the school for the spring term of 1934 and enrolled in a 'Beginners' Tumbling Class'. There were eighteen separate exercises or stunts prescribed for this class. It was necessary to do successfully at least ten of the eighteen in order to obtain a passing grade and the more stunts which were satisfactorily performed, the higher the grade which was given. One of these exercises is known as the 'roll over two'. To do it the performer takes a short run and dives over two persons who are on the floor on their hands and knees, alights on outstretched arms, and with the head curled under in order to complete a forward roll, comes to a standing position. While trying to accomplish this feat the respondent struck her head. The appellant contends that there is no evidence of any negligence of the school district, or of its officers or employees, which resulted in the injuries complained of and that they were caused by the contributory negligence of the student. It is also claimed that the damages awarded are excessive and that errors were committed by the trial court entitling the school district to a reversal of the judgment.

"Contrary to the rule of the common law, the legislature of this state has declared that school boards shall be 'liable as such in the name of the district for any judgment

against the district on account of injury to any pupil arising because of the negligence of the district or its officers or employees'. (Sec. 2.801, School Code; Deering's Gen. Laws, Act 7519.) The School Code also requires high school boards to prescribe suitable courses in physical education (sec. 3.731) and makes it the duty of such boards 'to enforce the courses of physical education prescribed by the proper authority, and to require that such physical education be given in the schools under their jurisdiction or control'. (Sec. 3.733.) All high school students except those in cadet companies or excused on account of physical disability must 'attend upon such courses of physical education for at least two hours each week that school is in session'. (Sec. 3.735.)

"Prior to the term in which she was injured, the respondent had been a student in the same school and was enrolled in the gymnasium classes. According to her testimony, in January, 1934, when the new semester commenced, she asked to continue in the gymnasium class but was told by the teacher in charge of registration that the gymnasium classes were full and that she would have to take physical education in the tumbling class. The school officials deny that this occurred. In any event, the respondent entered the tumbling class and attended regularly from January until May, when the accident occurred. In that time she learned to do a number of the exercises, including the 'roll over two'. The accident happened during a regular class period while the respondent was attempting to do the exercise with the teacher of physical education watching her. This teacher testified that as the respondent 'took off and jumped over the girls, her hands were not extended as they should be for the proper landing, but were about half bent, and consequently when her hands hit the floor her head was there also instead of the hands taking the weight so that the head could tuck under'.

■ "The implied finding of the jury that the employees of the school district were negligent is conclusive if there is substantial evidence which, when read with the inferences most favorable to the respondent, support the verdict. ■ The intendments are in favor of the judgment (*Hassell* v. *Bunge,* 167 Cal. 365 [139 Pac. 800]; *Hind* v. *Oriental Products Co.,* 195 Cal. 655 [235 Pac. 438]) and while the evidence shows that the respondent received injury because she did not do the exercise correctly, this does not necessarily convict her of contributory negligence nor absolve the school

district from liability. The question is whether the school officials used the same care as persons of ordinary prudence, charged with the duty of carrying on the public school system, would use under the same circumstances. ■ The legislature has made school districts responsible for the injury of any pupil resulting from the failure of their officers or employees to use ordinary care. What is ordinary care depends upon the circumstances of each particular case and is to be determined as a fact with reference to the situation and knowledge of the parties.

■ "In deciding whether the employees of the appellant used ordinary care it was proper for the jury to consider not only whether the exercise was inherently dangerous but also whether they should have allowed or required the respondent to take instruction in tumbling. ■ It is a matter of common knowledge that some students show much more aptitude for athletics than do others. Some enjoy physical exercise; others find games or stunts of any kind very difficult. Frequently students of the same age have very different capacities for physical training. Also, some forms of exercise are considered entirely proper for boys while too strenuous or otherwise undesirable for girls. In the exercise of ordinary care it was the duty of the teachers employed by the school district to take all of these factors with others into consideration in determining the kind of instruction to be given the respondent.

■ "In her testimony the teacher of the tumbling class said that in order to do the 'roll over two' the student should make an approach to the persons on the floor by a run in good rhythm, neither too fast nor too slow, and take off from the two feet, not from one, making a good spring over the backs of the other students to clear them from 12 to 18 inches. The important thing, she said, is the landing. Describing this she said the performer must land on the hands, with the hands taking the weight of the body almost straight but under control with the head tucked in. The exercise is completed, according to her, by dropping on the shoulders and coming to a standing position with the feet together.

"Of the 18 exercises taught in the tumbling class the 'roll over two' is the only one where the body is entirely off the floor for a portion of the time it is being performed. The evidence presented to the jury shows that it requires complete coordination, and the teacher admitted that if for any reason the rhythm required for that type of work is broken,

the arms must momentarily stand the full weight of the body going through the air four or five feet; also, that unless there is complete coordination in relaxing the arms and tucking in the head, 'there is liable to be difficulty'. If the student failed to tuck the head under at the proper moment, the teacher said, 'then the head would get it'.

"In addition to this enumeration of the requirements for the exercise, the jury had before it the testimony of the teacher of the tumbling class that proper performance depends not only upon a girl's agility and muscular strength but also upon her mental attitude. Muscular strength is not all that is required, she said. 'You might have muscular strength and not be able to do it.' The jury was told by the respondent that she took the tumbling class work under protest; that the physical education teacher gave her no instruction directly but that she was shown how to do the exercises by advanced students in the class; that in doing the 'roll over two' she had many times fallen on top of the girls on the floor; that she had a bad knee that 'went out' at times; that two weeks before the accident she had fallen in the locker room and that the physical education teacher had dressed her knee with hot compresses; and that she had then told the teacher that her knee was bad and that she did not want to take tumbling; but that the teacher said 'I would have to in order to get my credits.' This and other evidence, if believed by the jury is sufficient to support a verdict for the respondent either upon the theory that the 'roll over two' is not an exercise suitable for senior high school girls or that appellant's employees knew or should have known that because of the respondent's mental or physical condition she was not a proper subject for such instruction, or that the class teacher did not properly instruct and supervise her. It also justifies the implied finding of the jury that the respondent was not guilty of contributory negligence. While there was testimony from teachers of physical education that the 'roll over two' is not dangerous, the evidence also shows that injury could result if it was not performed in a particular way. That the respondent sustained some injury while attempting the exercise is certain. Under the circumstances shown in this case the issue of negligence was solely one for the determination of the jury. (*Mastrangelo* v. *West Side U. H. School District,* 2 Cal. (2d) 540 [42 Pac. (2d) 634].)

"The case of *Kerby* v. *Elk Grove Union H. S. District*, 1 Cal. App. (2d) 246 [36 Pac. (2d) 431, 94 A. L. R. 1502], relied upon by the appellant, presents a different situation. There the student died after being struck on the forehead by a basketball while engaged in playing the game at school. But the boy was considered a proficient basketball player and no one knew that he had the physical difficulty which the medical testimony showed was aggravated by the blow and caused death. The court properly held that the instructor was not negligent in permitting the student who appeared to be a vigorous, robust boy, to participate in the game in the absence of any knowledge of his malady. The injury in *Hack* v. *Sacramento City Junior College District*, 131 Cal. App. 444 [21 Pac. (2d) 477], was caused by the negligent act of students in doing something not particularly directed by the teacher and while he was not present. In *Underhill* v. *Alameda E. School District*, 133 Cal. App. 733 [24 Pac. (2d) 849], the court held that the statute imposing liability upon school districts is broad enough to cover injuries received by a pupil while playing in a school yard if such injuries are caused by the negligence of the district or its officers or employees, but found the complaint insufficient in its allegations of negligence. ▮ Applicable to the instant case is the rule stated in *Goodman* v. *Pasadena City H. S. District*, 4 Cal. App. (2d) 65 [40 Pac. (2d) 854], where it was said that a plaintiff may recover by proving either the existence of a danger known to the authorities who neglected to guard the pupils against it or that there was an unknown peril which by the exercise of ordinary care under the same circumstances a reasonably prudent person would have discovered.

▮ "The appellant contends that the trial judge erroneously refused to give to the jury the following instruction proposed by it: 'You are instructed that you are not to substitute your judgment with regard to what is correct and sound educational policy in the conduct of physical education for that of the Board of Education, but you are only to determine whether or not in the carrying out of said physical education work there was any negligence by an employee of defendant which proximately caused the injury suffered, if any, by Belva Bellman.' This ruling was correct. While it does not lie within the province of the jury to determine whether a certain subject should be taught, school authorities may be guilty of negligence in requiring a student to take a

particular course of study. The instruction complained of limited the liability of the appellant to negligence 'in the carrying out of said physical education work'. Of course, a school district would not be guilty of negligence if it prescribed a course of study which no student ever took. But the statute does not limit liability to negligence which occurs in teaching a subject, and the instruction may reasonably be interpreted as placing this restriction upon the right of the respondent to recover.

■■■ "After the taking of evidence was concluded but before the case was submitted to the jury the appellant asked leave to reopen its case for the purpose of asking Ordell Cohen, the guardian *ad litem* of the respondent and a witness in the case, whether she had ever been convicted of a felony and also whether she had been arrested on certain occasions. To support its request made at that time, counsel for the appellant presented to the trial judge in the absence of the jury a record which he said he had just then received from the police department. He also said that he had no information other than was shown by it.

"When the motion was made the judge said, 'You can ask her if she has been convicted of a felony, of course.' This was followed by a discussion between counsel concerning the record after which the motion was denied, apparently for the reason that the record or written memorandum giving certain information concerning Ordell Cohen does not show any conviction of a felony but only an arrest and conviction with a sentence of one year in a county jail. Appellant's counsel made no showing that he believed Mrs. Cohen had suffered conviction of a felony at any time and as the motion was made upon the record which was submitted to the court, it was properly denied. A witness may not be impeached by evidence of particular wrongful acts, but the conviction of a felony may be shown. (Sec. 2051, Code Civ. Proc.)

■■■ "Appellant also complains that a witness was not allowed to illustrate her testimony by the use of pictures in text-books. The admission of photographs or diagrams for this purpose rests largely within the discretion of the trial judge. No abuse of that discretion has been shown. [12] Also, there was no error in refusing to admit in evidence a junior high school bulletin on physical education. The appellant insists that evidence showing 'that the same exercises or stunts were authorized for junior high school girls and

performed by them' was relevant to the issues before the court. But the fact that the same exercises were prescribed for younger girls had no evidentiary value. It may be even more negligent to require girls of junior high school age to take certain physical exercises than to make the same requirement for older girls. The fact that the exercises were prescribed for one group does not prove that the school authorities used due care in requiring students of another group to take them.

■ "Concerning the amount of damages awarded to the respondent by the jury, the appellant contends that it is so out of proportion to the injuries shown by the evidence as to require a new trial. While the sum to be allowed as damages for personal injuries is left to the sound discretion of the jury, it is subject to review by the trial judge in ruling upon a motion for a new trial (sec. 657, Code Civ. Proc.), and the power of this court to relieve a defendant from a judgment for damages in an amount so plainly and outrageously excessive as to indicate that it was arrived at as the result of passion or prejudice has often been recognized and exercised. (*Livesey* v. *Stock*, 208 Cal. 315 [281 Pac. 70] ; *Epply* v. *Los Angeles Creamery Co.*, 216 Cal. 194 [13 Pac. (2d) 664] ; *Reneau* v. *Hirsch*, 88 Cal. App. 1 [262 Pac. 1100].) ■ The measure of damages in an action for personal injuries is the amount which will compensate for all the detriment proximately caused by the negligence of the defendant. (Sec. 3333, Civ. Code.) 'Damages must in all cases be reasonable . . . ' (sec. 3359, Civ. Code), but what is a reasonable amount is a question upon which there may legitimately be a wide difference of opinion. Before an appellate court may interpose its judgment as to the sum which will compensate a plaintiff for personal injuries, it must appear that the recovery is so excessive, when compared with a sum reasonably warranted by the evidence showing the nature and extent of the injuries received, as to shock the sense of justice and raise the presumption that the amount was arrived at as the result of passion and prejudice rather than upon a fair and honest consideration of the facts. (*Slaughter* v. *Van Winkle*, 213 Cal. 573 [2 Pac. (2d) 789].)

■ "The respondent claims that her skull was fractured when she fell and the medical evidence offered by her confirmed the fracture and was to the effect that it might result in serious and permanent consequences. On the other hand, while the history given by the respondent showed that after

the accident she developed a severe headache and was nauseated and that she later suffered from headache, dizziness, occasional vomiting and loss of weight, her physicians found few objective symptoms. One of her physicians testified that the physical and eurological examinations were negative except for a nystagmus, which is an involuntary oscillation of the eyeball, and the lack of planar reflex on the left side, indicating a mild interference with the nerves of the spinal column. Another physician testifying in her behalf found the nystagmus, which he said was a disturbance of the coordination of the eye muscles, indicating some organic disturbance within the pathways that control the muscular movements of the eye but 'was not a pronounced thing', and some abnormal reflexes. He said that her tendon reflexes were exaggerated, but he added, 'I would not place very positive significance on that except that it was in keeping with the diagnosis as finally made.' He also mentioned that a Babinski test showed some mild disturbance. Concerning this test he said: 'By itself it could not be given, in my mind, a very positive significance, but taken in connection with other findings it might.' He stated as his opinion of the respondent's injuries that at the time of the trial she was suffering from the local and general effects of a brain injury which made prognosis difficult, and that the symptoms complained of might persist for a long time with a 'fair probability' of more serious manifestations.

"Viewing this evidence most strongly in favor of the respondent and giving her the benefit of all reasonable inferences, a verdict of $15,000 is much in excess of the reasonable amount which the law fixes as the measure of damages which the respondent may recover and impels the conclusion that it was arrived at as a result of passion or prejudice. The appellant charged the respondent and her guardian with exaggerating the extent of the injury which the respondent received. In support of this claim the appellant called one witness who testified that immediately before an examination of the respondent by a physician, the guardian directed her to run in order to increase the rate of her heart beats and make her condition appear more serious than it was. Other unfair and misleading practices were charged to the respondent and the guardian. While both the respondent and the guardian denied that the injuries had been exaggerated by them, each

admitted that the respondent walked much more than a mile just before one physical examination.

██ "But assuming that the respondent and her guardian have not exaggerated the injuries, the medical testimony fails to show any certainty of serious permanent injury. The respondent's own physician testified only to a probability of permanent disability. Under section 3283 of the Civil Code, 'damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future'. By this section, in an action for personal injuries recovery is limited so far as physical suffering, or pain, or mental anguish are concerned, to compensation for the consequences which have occurred up to the time of the trial, or it is reasonably certain under the evidence will follow in the future. (*Melone* v. *Sierra Ry. Co.*, 151 Cal. 113 [91 Pac. 502].) The jury may not consider consequences which are only likely to occur. 'To entitle a plaintiff to recover present damages for apprehended future consequences, there must be evidence to show such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury.' (*Bailey* v. *Yosemite Portland Cement Corp.*, 136 Cal. App. 111 [28 Pac. (2d) 65] ; *Silvester* v. *Scanlon*, 136 Cal. App. 107 [28 Pac. (2d) 97].) No such certainty is shown in the evidence in this case.

██ "Considering the medical evidence presented by the respondent, an award of $15,000 is grossly excessive and raises the presumption that it could not have been based upon a fair consideration of the facts relating to the injuries which the respondent suffered. The average citizen looks upon school authorities as protectors of the children in their charge and the circumstances of the injury, as related by the respondent to the jury, would particularly arouse the passions and prejudices of parents. But the respondent was only in bed three weeks and has since admittedly assisted in doing housework and performed the duties of a young woman in a home. Measuring the respondent's evidence by the rules which have been stated, the sum of $5,000 is the maximum amount which may be permitted to stand. There is no reason to set aside the verdict of the jury that the appellant was guilty of negligence and liable to the respondent for the injuries proximately occasioned thereby. (*Pretzer* v. *California Transit Co.*, 211 Cal. 202 [294 Pac. 382].) But the appellant is entitled to a new trial upon the sole issue of the amount of

damages unless within thirty days from the filing of the *remittitur* in the court below, the respondent shall remit from the judgment the sum of $10,000.''

It is ordered that if such remission be so made then the judgment shall stand affirmed with neither side to recover costs upon appeal; otherwise it shall stand reversed and the cause be remanded for trial upon the issue stated.

SHENK, J., Dissenting.—I dissent.

It seems to me the majority has totally disregarded the rights of boards of education and trustees of school districts to provide courses in physical education in accordance with power vested in them by the law of the state, and has placed within the power of a jury to say whether such courses should be pursued regardless of negligence on the part of the public authorities. Courses in physical education will thus be curtailed or eliminated, depending on the degree of ''guess'' indulged by the school authorities on what a jury would say about it. My views are expressed in the dissenting opinion of Mr. Justice Nourse sitting *pro tempore* in this court on the former hearing and in which dissenting opinion I then concurred. That opinion is as follows:

''The complaint charges the district with negligence in general terms. To hold it liable for injuries received in this manner it is necessary to prove that the district was guilty of some act of omission or commission which this court can say as a matter of law is actionable negligence. 'The law does not make the school districts insurers of the safety of the pupils at play or elsewhere.' (*Goodman* v. *Pasadena City H. S. Dist.*, 4 Cal. App. (2d) 65 [40 Pac. (2d) 854].)

''The record is silent in so far as proof of any act of negligence is concerned. If it be argued that it was negligence for the school district to give the course of instruction in the first instance, the answer is that it is one prescribed and accepted in thousands of other schools. If it be argued that this particular stunt is inherently dangerous, the same answer holds. Since the true test of negligence is what a reasonable person would do under similar circumstances, the directors of the school district cannot be held negligent in prescribing these exercises in view of the common acceptance of the course by others. Here is a standard of 'due care' established by accepted practice throughout our common schools. Our dis-

trict cannot be held negligent in simply following this general standard.

"There is nothing left but the asserted negligence of the instructor, first, in her method of handling the class, and second, in permitting plaintiff to do this stunt at this particular time. As to this, there is no evidence of incompetency or neglect in her manner of instruction. To the contrary the only evidence on the subject shows that the class was brought on carefully and skillfully until the close of the semester when the girls were all prepared to perform these stunts for their grades. The plaintiff frankly testified that she had gone through all this development successfully and had performed this particular stunt more than forty times before and during the day in which she was injured.

"It is intimated that the instructor might have been negligent in permitting plaintiff to do the stunt on this particular day because of a previous knee injury. The alleged injury to the knee occurred two weeks before the date of the injury sued on. During the period following, plaintiff continued to perform this stunt and others on numerous occasions twice a week without complaint and without notice to her instructor that she had any difficulty or distress. The 'knee injury' was plainly an afterthought greatly overemphasized by her counsel. But, assume it to be true, still after this injury the plaintiff continued with the course unhampered, participated in all her other class activities, and, on the day of the accident she voluntarily went to her teacher, told her she had accomplished the stunt, that she was *ready* for her test, and asked her teacher to observe her for her marking. The injury resulted from her improper use of her hands. She did not at any time attribute it to her knee. Her explanation is: 'Q. What happened to you? A. As I was running up to go over the girls my hands went over and they went underneath me and I went down on the mat and I hit my head on this side.' A number of other girls in the class who witnessed the accident testified that plaintiff 'took off' on one foot, whereas, they had all been trained to take off on both feet. This is what caused her fall, and this is not controverted in any respect whatever. The stunt was the last of a series of eighteen given in the course. It was necessary for the pupil to pass but *ten* of the eighteen to get her grade. It was *not* necessary for her to do the 'roll over two'. She chose this voluntarily and never complained to her instructor that it

was too hard or too dangerous or that she had any difficulty or pain. Her protest was to the course as a whole. She wanted to take an easier course for the same grade—a very common desire among pupils in all schools.

"This case is of far greater importance than the amount of the verdict. It charges the school district with negligence when it has done nothing more than follow the rules and regulations in accordance with universal practice; it condemns as careless and negligent a competent and faithful teacher who just did her duty as prescribed for her in the rules and regulations. It opens the door to suits for damages for any injury which a pupil may sustain—not only upon the school premises, but on the street or at home, because it holds that the jury is the final judge of *what is negligence* and hence, may give damages at its will. In effect it holds that each jury may determine what in its judgment is a proper course of instruction, whereas the state has committed that function to the school authorities.

"The opinion is unfair to the school district and to the entire structure of education throughout the state. No district and no teacher can tell whether physical education is condemned as negligence in all cases, or whether it is the duty of the teacher to examine and *know* the physical and mental condition of every pupil, and assume liability if any injury occurs to a pupil by reason of such physical and mental condition at any time and at any place.

"Confusion must result from the opinion because of the difficulty in determining its rule. What is the rule of this case? Is it that if there is any hazard in a course of instruction the district is liable for any injury resulting therefrom? If so the schools are negligent *as a matter of law* for giving that course, though the state school law may authorize or require it. Is it intended to hold that a teacher is negligent if she permits a pupil to take a course which carries some hazard, or if the pupil is later found to have been physically unfit? If so the teacher must have medical training to determine the physical fitness of each pupil. Is it the rule that negligence results when injury arises in a course which is taken under protest? The opinion states that some girls enjoy the exercises, but that this plaintiff took it under protest. The same is often true as to Latin, algebra and the sciences. Would it follow that the district is liable if a girl gets a headache when she takes algebra under protest? This

girl was a healthy specimen weighing 117 pounds and had never before complained to the teacher of physical weakness or sickness—except as to the so-called knee injury. How can it be said that the district was negligent in permitting her to take the course in the first instance? Is it the rule of the case that this course is 'inherently dangerous' or is this confined to the particular stunt of 'roll over two'? The opinion states that the stunt *might* be inherently dangerous—that means injury might result if it is not done properly. Every athletic event, the R. O. T. C., the courses in physics, chemistry, the simple game of tennis or hockey—even the old fashioned 'wand' exercises—would likewise be 'inherently dangerous' because injury might result in any of them. The opinion states that the exercise might have been 'too strenuous or otherwise undesirable for girls'. This goes to the entire course of physical education for girls throughout the entire school system of the state. Does the opinion hold that the district is negligent in prescribing the course in the first instance, because girls are too weak generally, or because they are unable to absorb instruction to perform properly? Or is it intended merely to hold that the courts and not the school authorities should determine what courses of instruction should be given?

"The opinion fails to pass on any of these elements positively. It does say that all these circumstances taken together would support an *inference* of negligence. This is sound if any of the 'circumstances' is negligence in itself. But this is not sound if *no one* of the elements is actionable negligence as a matter of law. The sum of nothing plus nothing equals nothing.

"Where the standard of conduct required of persons under given circumstances is so obvious as to be applicable to all persons under such circumstances a question of law is presented. (*Ross* v. *Pacific Elec. Ry. Co.*, 39 Cal. App. 658 [179 Pac. 538]; *Hamlin* v. *Pacific Elec. Ry. Co.*, 150 Cal. 776 [89 Pac. 1109].) It is error to say that negligence is always a question of fact for the jury. The truth of the facts is to be determined by the jury but if these facts do not as a matter of law constitute actionable negligence it is a question of law for the court. Negligence cannot be inferred when the only facts proved are such that reasonable minds—not sympathy—can draw but one conclusion—that there was no negligence. It must be borne in mind that this is not a question of conflict

in the evidence. We have given to the respondent every presumption of truth in her evidence and still there is no evidence of any act of commission or of omission by the school district or by its employee which can, as a matter of law, be designated as actionable negligence.''

Langdon, J., and Houser, J., concurred.