Filed 5/5/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| CRYSTAL BERGSTROM, | B309154 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS109380) |
| v. | |
| ZIONS BANCORPORATION, N.A., | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge. Reversed and remanded with directions.

Crystal Bergstrom, in pro. per., for Plaintiff and Appellant.

Dykema Gossett and Brian H. Newman for Defendant and Respondent.

\* \* \* \* \* \*

A judgment creditor seeking to seize funds in bank accounts held by the judgment debtor's spouse served a notice of levy on the bank's agent for service of process. Although the notice of levy form unambiguously listed the bank as the party to be served, the agent misread the form and rejected it. By the time the agent informed the bank of its mistake and the bank then froze the funds, the spouse had all but drained the accounts. The Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.)[1] provides that a third person's "fail[ure] or refus[al]" to deliver property subject to a levy "without good cause" renders the third person "liable to the judgment creditor" for the amounts withdrawn and covered by the levy. (§ 701.020, subd. (a).) In deciding whether the bank is liable to the judgment creditor for the agent's mistake in this case, we must answer two questions: (1) When does an agent's mistake constitute "good cause" that therefore excuses its principal's failure to deliver property subject to a levy, and (2) was the agent negligent in this case for misreading the form? Because "good cause" exists if a third party does "not know or have reason to know of the levy" (§ 701.010, subd. (c)), because the "reason to know" standard looks to what "a reasonable person . . . would have inferred" (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 547 (*Doe*)), and because an agent's knowledge is imputed to its principal (Civ. Code, § 2332), we hold that "good cause" exists only when the *agent*'s mistake that causes the agent (and, hence, the principal) to not have reason to

_____

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

know of the levy is a mistake that a reasonable person would make—in other words, when the agent's mistake does not amount to negligence.  Further, because the agent in this case was negligent in misreading the standardized form it was served with, the agent for service of process—and hence its principal, the bank—had reason to know of the levy, such that the bank is liable to the judgment creditor for some (though not all) of the funds withdrawn.  Accordingly, we reverse the trial court's ruling in the bank's favor and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

I.      **Facts**

A.      *Underlying judgment*

In 2007, a Nevada state court entered a $2.1 million judgment against Northamerican Sureties, Ltd. (Northamerican) and Robert S. Michaels (Michaels).  By April 2019, the amount of the judgment—with interest and costs—had blossomed to $4,064,012.61.

B.      *Attempts to collect on judgment*

1.      *Tying the bank accounts to the judgment debtor*

In August 2007, Crystal Bergstrom (plaintiff) was assigned the judgment, thereby stepping into the shoes of the judgment creditor.

In 2019, plaintiff learned that Michaels' wife—Cheryl Pitcock (Pitcock)—was the sole or coholder of two Los Angeles-based bank accounts at Zions Bancorporation, N.A. (Zions).  As of April 1, 2019,[2] the bank account ending in 1130 had a balance of $117,372.35, and the bank account ending in 9928 had a balance of $638.62.

---

[2]      Unless otherwise indicated, all further date references are to the year 2019.

3

At that time, Corporation Service Company (CSC) was acting as Zions's agent for service of process for California-based matters.

On March 29, plaintiff obtained a writ of execution in the amount of $4,944,759.25 from the Los Angeles Superior Court.

2. *Levy and failure to acquire funds*

On April 2, plaintiff had a process server serve CSC with (1) the writ of execution, (2) a notice of levy on "all accounts standing in the name of" Northamerican, Michaels, or Pitcock, (3) a spousal affidavit attesting that Pitcock was Michaels's spouse, and (4) a blank memorandum of garnishee form listing "ZB, National Association"[3] as the "garnishee."

The notice of levy is a one-page standardized form that in this case had the following information filled in:

• Among a series of boxes in the top third of the form, the notice of levy had a box that listed the "PLAINTIFF" as "Judicial Judgment Enforcement Services" (which is plaintiff's company) and the "DEFENDANT" as "Northamerican Sureties, Ltd., and Robert S. Michaels."

• Immediately under the boxes, the notice of levy stated: "TO THE PERSON NOTIFIED (*name*): ZB, NATIONAL ASSOCIATION."

• Beneath that notification, the notice of levy stated that "[t]he property to be levied upon is described . . . as . . . [a]ll accounts in the name of [Northamerican], and/or [Michaels], and/or his spouse [Pitcock] . . . ."

---

[3] At the time the levy was executed, Zions was trading under the name ZB National Association. It has since changed its name.

4

By the time CSC received the notice of levy, someone had underlined the words "Northamerican Sureties, Ltd." in the box listing the "PLAINTIFF" and "DEFENDANT."

When CSC received the notice of levy and accompanying documents, its employee glanced only at the underlined words "Northamerican Sureties, Ltd." Based on the "common practice of process servers to underline in ink the party to which a legal document is directed when the document is being served," CSC's employee mistakenly believed that the underlined words highlighted the party to be served with the levy, and on that basis rejected the notice of levy because its principal was Zions, not Northamerican. On April 3, CSC mailed a letter notifying plaintiff of the rejection.

Plaintiff received CSC's letter on April 9 and immediately called CSC to inform CSC of its mistake. CSC e-mailed Zions later that day to inform Zions of the levy.

Pursuant to Zions's internal policy, Zions did not freeze the money in Pitcock's accounts until 4 p.m. the following day, April 10.

### 3.    *Pitcock's withdrawals*

On April 3, Pitcock withdrew $15,000 from the account ending in 1130 by writing a check to an LLC she controlled.

On April 10, at 2:19 p.m., Pitcock withdrew (1) $102,172.35 from the account ending in 1130 by writing a check to the same LLC she controlled, and (2) $438.62 from the account ending in 9528 by writing a check to herself.

Because all of these withdrawals occurred before 4:00 p.m. on April 10, Zions had not yet frozen the funds.

5

After deducting costs and fees from the $200 remaining in both accounts, Zions ultimately cut plaintiff a check for $83 pursuant to the levy.

## II.    Procedural Background

In January 2020, plaintiff filed a motion for a court order imposing third party liability on Zions for its noncompliance with the April 2 notice of levy. Plaintiff sought to hold Zions liable for the $117,815.97 Pitcock was able to withdraw on April 3 and April 10 due to Zions's delay in freezing the funds in the accounts plaintiff controlled.

After two rounds of briefing and two hearings, the trial court denied plaintiff's motion. In its written ruling, the court ruled that (1) Zions had "good cause" for not freezing the funds in Pitcock's accounts before April 9 because neither it, nor CSC, was "negligent" in misreading the notice of levy due to the "custom and practice" of assuming that whatever was underlined was the party to whom the notice was addressed; (2) Pitcock's ability to drain the accounts was an event that was largely plaintiff's fault because, in the court's view, plaintiff had been "substantially responsible for CSC's week-long delay" in correcting its error; and (3) Zions acted "promptly" by freezing the funds by 4:00 p.m. of the day after it obtained actual notice of the levy because the term "promptly" grants third parties "some amount of leeway." At the second hearing, the court stated that Zions should not be liable because it did not "blantant[ly]" or "willful[ly]" refuse or fail to implement the levy.

Plaintiff filed this timely appeal.

6

**DISCUSSION**

**I.    The Pertinent Law, Generally**

The propriety of the trial court's ruling lies at the intersection of two bodies of law:  (1) the Enforcement of Judgments Law, and (2) the law of agency.

**A.    *The Enforcement of Judgments Law***

California's Enforcement of Judgments Law (Law) is a "'comprehensive and precisely detailed scheme' governing enforcement of money judgments" in California.  (*Kono v. Meeker* (2011) 196 Cal.App.4th 81, 86.)  "As a general rule, the Law authorizes a creditor holding a 'money judgment' to 'enforce' that judgment against 'all property of the judgment debtor . . . .'" (*O'Brien v. AMBS Diagnostics, LLC* (2016) 246 Cal.App.4th 942, 947, quoting §§ 695.010, subd. (a), 699.710.)

**1.    *A judgment creditor's power to levy***

When a creditor has a judgment in its favor against a debtor, the creditor seeking to enforce that judgment against the debtor's property must (1) obtain a *writ of execution* from the trial court, which is directed to the sheriff or other levying officer and authorizes them to enforce the judgment (§§ 699.510, subd. (a), 699.520), and (2) complete and serve a *notice of levy*, which is directed to the judgment debtor or third person holding the debtor's property and notifies them of their duties and rights (§ 699.540).  (See *Meyer v. Sheh* (2022) 74 Cal.App.5th 830, 837-838.)

When the debtor's property is in the possession of a third person (such as a financial institution), the judgment creditor may serve the writ of execution and the notice of levy upon the third person; once it does, the third person "shall" "at the time of the levy or promptly thereafter" "deliver to the levying officer any

7

of the [judgment debtor's] property levied upon that is in the [third person's] possession" or "control"[4] (1) "unless the third person claims the right to possession of the [judgment debtor's] property," or (2) "[u]nless the third person [otherwise] has good cause for failure or refusal" to comply with the levy. (§ 701.010, subds. (a) & (b)(1).) For purposes of the second exception, "'good cause' includes, but is not limited to, a showing that the third person did not know or have reason to know of the levy from all of the facts and circumstances known to the third person." (§ 701.010, subd. (c).)

When the third person is a "financial institution" and the property to be levied is a deposit account with that institution, the procedures to be followed turn on whose name is on the account. When the account is in the judgment debtor's name, the judgment creditor must follow the procedures applicable to any levy served on a third person and must also serve the judgment debtor with notice of the levy. (§§ 700.140, subd. (a), 699.550.) When the account is in the name of someone other than the judgment debtor, the judgment creditor must not only follow the procedures applicable to any levy served on a third person and serve the judgment debtor with notice of the levy, but must also (1) obtain "a court order authorizing the levy" unless, as pertinent here, the account is in the name of the "judgment debtor's spouse or registered domestic partner," in which case an "affidavit" attesting to the relationship will suffice, and (2) serve the account holder with notice of the levy. (§ 700.160, subds. (a), (b)(2).) The financial institution where the account is held may

_____

[4] Within 10 days after service, the third person must also complete a garnishee's memorandum. (§ 701.030.)

observe a 15-day holding period before releasing any funds to the judgment creditor.  (§ 700.160, subd. (c).)

Once the financial institution is properly served as detailed above, an execution lien "arises" as to the "amounts in [the] deposit account at the time of service on the financial institution."  (§ 700.140, subds. (b) & (c).)  While this lien is in effect, the financial institution is not to "honor a withdrawal request or a check or other order for the payment of money from the deposit account" unless there still will be "sufficient funds . . . available to cover the levy" (*id.*, subd. (d)), and the institution cannot be held liable to the depositor for doing so (*id.*, subd. (e)).  This limitation on the financial institution's discretion is an express statutory exception to the usual duty of a financial institution to honor its contractual relationship with its depositor even when third parties might make a claim against funds in a depositor's account.  (*Grover v. Bay View Bank* (2001) 87 Cal.App.4th 452, 456 [noting bank's obligations to depositor except when the Law applies]; *Chazen v. Centennial Bank* (1998) 61 Cal.App.4th 532, 537, 539, 542; Fin. Code, § 1450, subd. (b) [obligating banks to honor depositor's checks absent an "appropriate order against the bank from a court"].)

2.     *Consequence of not obeying a valid levy*

If the financial institution (as a third person) "fails or refuses" to "deliver property to the levying officer" "without good cause to do so," the financial institution "is liable to the judgment creditor for" the amount of the levy.  (§ 701.020, subd. (a).)

**B.     *The law of agency***

It is a fundamental tenet of agency law that a principal is deemed to know what its agent knows while acting within the scope of the agent's authority.  (Civ. Code, § 2332 ["As against a

9

principal, both principal and agent are deemed to have notice of whatever either has notice of . . ."]; *Chapman College v. Wagener* (1955) 45 Cal.2d 796, 802 ["The general rule of agency is that notice to or knowledge possessed by an agent is imputable to the principal."].)  This presumption of "imputed knowledge" applies to what the agent subjectively *does* know as well as what the agent reasonably *should* know.  (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 797-798 (*Roche*); *Hall v. Rockcliff Realtors* (2013) 215 Cal.App.4th 1134, 1141 (*Hall*).)  This presumption is also "irrebuttable."  (*Roche*, at p. 797.)  As to what an agent subjectively knows, agents have "a legal duty to disclose information obtained in the course of the agency and material to the subject matter of the agency, and the agent will be presumed to have fulfilled this duty."  (*Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 534-535; *Sands v. Eagle Oil & Refining Co.* (1948) 83 Cal.App.2d 312, 319.)  As to what an agent reasonably should know, the agent's negligence in not acquiring information that it reasonably should have acquired is chargeable to the principal as well.  (Civ. Code, § 2338 ["a principal is responsible to third persons for the negligence of his agent in the transaction of business of the agency"]; *Hall*, at p. 1140.)

**II.  Analysis**

Plaintiff argues that the trial court erred in denying her motion to hold Zions responsible for the full amount of money Pitcock withdrew from her accounts at Zions.  That motion was grounded in section 701.020, which imposes liability only if Zions, as the third person served with a notice of levy addressed to it, "fail[ed] or refuse[d]" to "deliver" the money in Pitcock's accounts "without good cause to do so."  (§ 701.020, subd. (a).)  Because it is factually undisputed that CSC is Zions's agent for service of

10

process and that CSC received a notice of levy addressed to Zions on April 2 but, due to CSC's mistake in reading the notice, Zions did not freeze Pitcock's accounts until 4:00 pm on April 10, Zions's liability under section 701.020 turns on three questions: (1) did CSC's mistake constitute "good cause" for Zions not to freeze Pitcock's accounts "at the time of levy [on April 2] or promptly thereafter" (and instead to delay in freezing Pitcock's accounts until April 10), (2) if "good cause" turns on whether or not CSC was negligent in misreading the notice of levy, was CSC negligent, and (3) if CSC (and, by dint of agency law, Zions) were negligent, to what remedy is plaintiff entitled?

### A. *Did CSC's mistake constitute "good cause"?*

Whether CSC's mistake constitutes "good cause" turns partly on a challenging issue of statutory construction and partly on the application of that interpretation to undisputed facts. We review both types of issues de novo. (*People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 234 [statutory interpretation]; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 [application of law to undisputed facts].)

Section 701.020 excuses a third person from liability for its "fail[ure] or refus[al]" to comply with a notice of levy absent "good cause," but does not in that section define "good cause." (§ 701.020, sub. (a).) Fortunately, "good cause" is defined in the closely related section that spells out the third person's statutory duty to comply with a notice of levy absent "good cause." (§ 701.010, subd. (c).) Because these two statutes deal with the same duty of the third person to respond to levies, the definition of "good cause" used by one applies with equal force to the other. (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 654 (*J.M.*) ["'If the statutory language is

11

unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.' [Citation.]"]; *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 979 ["words or phrases given a particular meaning in one part of a statute must be given the same meaning in another part of the statute"]; see also *Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 167 [statutes in pari materia must be harmonized].)

The pertinent definition of "good cause" defines the term as "includ[ing], but . . . not limited to, a showing that the third person *did not know* or *have reason to know* of the levy from all the facts and circumstances known to the third person." (§ 701.010, subd. (c), italics added.)

What a third person "know[s]" generally refers to their *actual, subjective* knowledge. (E.g., *Deutsch v. Masonic Homes of California, Inc* (2008) 164 Cal.App.4th 748, 773 (*Deutsch*) ["'knew' refers to actual knowledge"]; *Da-Green Electronics, Ltd. v. Bank of Yorba Linda* (9th Cir. 1989) 891 F.2d 1396, 1399.) Because substantial evidence supports the trial court's implicit finding that CSC did not *actually, subjectively* know that the notice of levy was properly addressed to Zions until April 9, CSC—and, by imputation, Zions—"did not know" of the levy until April 9. (*People v. Hughes* (2002) 27 Cal.4th 287, 327 [factual findings reviewed for substantial evidence]).

What a third person has "reason to know" generally refers to whether "after examining the facts in the [third person's] possession, a *reasonable person* of ordinary intelligence . . . would have inferred the existence of the ultimate fact at issue or regarded its existence as so highly probable as to conduct himself or herself as if it did exist." (*Doe, supra*, 42 Cal.4th at p. 547,

12

italics added; *Deutsch, supra,* 164 Cal.App.4th at p. 773 [same]; *Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 717-718 (*Santillan*) [same].)  Although the "reason to know" standard is a species of constructive knowledge, it is a stricter species because "reason to know" turns solely on what a reasonable person would know based on the "facts in [his or her] possession" (and thus, unlike other species of constructive knowledge, imposes no duty to inquire and obtain additional facts).  (*Santillan*, at pp. 717-718 ["'reason to know' . . . does *not* mean 'inquiry notice'"]; cf. Civ. Code, § 19 [defining "constructive notice" as "actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact"].)  What is more, a "reasonable person" standard is synonymous with a negligence standard because "'ordinary negligence' . . . consists of a failure to exercise the degree of care in a given situation that a *reasonable person* under similar circumstances would employ . . . ."  (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 753, italics added; *Bellman v. San Francisco High School Dist.* (1938) 11 Cal.2d 576, 589; *Anderson v. Fitness Internat., LLC* (2016) 4 Cal.App.5th 867, 881.)  Consequently, whether a third person has a "reason to know" turns on whether, based solely on the "facts in [its] possession," the third party was *negligent* for not inferring the existence of the ultimate fact:  If the third person acted reasonably (and hence, not negligently), then it would not have "reason to know" because a "reasonable person of ordinary intelligence" would not have inferred the fact of notice; but if the third person acted unreasonably (and hence, negligently), then it *would* have reason to know.

The trial court and Zions offer two competing standards other than negligence to define "good cause."

13

In its oral comments, the trial court suggested that "good cause" existed only when the third person "blatant[ly]" or "willful[ly]" failed to know of the levy. We reject this suggestion for two reasons. First, this suggestion was nowhere in the court's written ruling, and a court's oral comments inconsistent with its written ruling are generally disregarded. (E.g., *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 ["a judge's comments in oral argument may never be used to impeach the final order"].) Second, adopting this suggestion would require us to swap out the statute's "reason to know" standard and substitute in its place a "willful" or "blatant" refusal standard; we are generally not allowed to make such substitutions. (*J.M.*, *supra*, 2 Cal.5th at p. 657, fn. 7 ["It is not for us to rewrite . . . statute[s]"].)

Zions argues that a third person acts with "good cause" as long as it does not have *actual knowledge* of the levy. We reject this argument for two reasons. First, this argument ignores that the statutory definition of "good cause" requires proof that the third party "did not know" *and* that the third party did not "have reason to know." (§ 701.010, subd. (c).) Zions is essentially asking us to lop off the second part of the definition; this we cannot do. (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 611 ["courts may not excise words from statutes"].) Second, having the definition of "good cause" turn solely on a lack of actual knowledge would lead to an absurd result, which is to be avoided. (*People v. Bullard* (2020) 9 Cal.5th 94, 106 [courts must "choose a reasonable interpretation that avoids absurd consequences that could not have possibly been intended"].) If actual knowledge were the sole test, third persons could escape liability by negligently declining to read notices of

14

levy or, worse yet, taking actions to remain willfully ignorant of such notices; either way, the third person would not "know" of the levy. Even more troubling, because a judgment creditor is statutorily required to also serve the account holder and judgment debtor with the notice of levy, a definition of "good cause" that makes a third person's duty to comply with a notice turn on its actual knowledge would make it far more likely that the judgment debtor or account holder would be able to drain the account before the third person bothers to acquire actual knowledge of the levy and freezes the funds at issue. Such a result is inimical to the purpose of the Law, which is to facilitate—not obstruct—the judgment creditor's collection of the funds in those accounts. (*Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Bd.* (1989) 49 Cal.3d 408, 425 ["A court should not adopt a statutory construction that will lead to results contrary to the Legislature's apparent purpose."].)

### B. *Was CSC negligent in making its mistake?*

Under the Law, a financial institution has *a duty* to a judgment creditor to accept a notice of levy and, if it is valid and applies to one of the institution's customers, freeze any funds subject to the ensuing execution lien. (§ 700.140.) As a result, whether CSC was negligent turns on whether it *breached that duty*. Whether there was a breach turns on the applicable "standard of care" to which CSC's conduct must conform. (*Issakhani v. Shadow Glen Homeowners Assn.* (2021) 63 Cal.App.5th 917, 934.) The "default" standard of care is the general duty to act reasonably. (*Ibid.*; *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619 ["In general, each person has a duty to act with reasonable care under the circumstances"]; *Vasilenko v. Grace Family Church* (2017) 3

15

Cal.5th 1077, 1083; Civ. Code, § 1714, subd. (a).) Although a determination of breach of the standard of care usually is a question of fact reviewed for substantial evidence, it may be resolved as a matter of law "where 'no reasonable jury could [fail to] find the defendant['s]'" "conduct violate[d] the degree of care [expected] of him." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 188; *Lysick v. Walcom* (1968) 258 Cal.App.2d 136, 150; *Polk v. Los Angeles* (1945) 26 Cal.2d 519, 528.)

Here, we conclude that CSC's failure to properly read the notice of levy was unreasonable as a matter of law. As a general matter, a reasonable person is charged with reading the content of documents presented to him or her—particularly where, as here, those documents are legal documents being served; a failure to do so constitutes negligence. (E.g., *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183, fn. 11 [failure to reach "contents of a written agreement" is "negligent"]; *Rosenthal v. Great Western Fin. Securities* (1996) 14 Cal.4th 394, 423 [same]; *Widess v. Title Ins. & Trust. Co.* (1931) 112 Cal.App. 343, 347-348 [same]; *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 52 [same].) As an entity whose *very job* is to read papers served on it like the standardized one-page notice of levy form—a form that explicitly requires a judgment creditor to specify, in a fixed location, the third person subject to the notice of levy as the "PARTY TO BE NOTIFIED"—CSC's failure to read the form properly is even more unreasonable (and hence more negligent).

The trial court ruled that neither CSC nor (by extension) Zions was negligent for two reasons. First, the court ruled that CSC was just following the "custom and practice" of looking at

16

whatever was underlined and assuming that the underlined person or entity was the third person to whom the notice of levy was directed. Although the common practice of an industry can be relevant to the standard of care (at least when the standard of care is not one that requires expert testimony) (e.g., *Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 276-277; *Leonard v. Watsonville Community Hospital* (1956) 47 Cal.2d 509, 519-520 (*Leonard*)), such common practices are not *controlling* because "'[g]eneral negligence cannot be excused on the ground that others in the same locality practice the same kind of negligence'" (*Leonard*, at pp. 519-520, quoting *Ales v. Ryan* (1936) 8 Cal.2d 82, 100). The underlining may have been distracting to CSC, but we refuse to treat it as excusing CSC from looking at the part of the standardized form specifically meant to list the party to be served. Second, the court found that plaintiff is "substantially responsible for CSC's week-long delay" in contacting Zions about the notice of levy. To begin, plaintiff's subsequent dilatory conduct in being slow in telling CSC that it misread the notice of levy form does not retroactively make CSC's negligent misreading *un*-negligent. Further, the trial court's finding is not supported by substantial evidence because the record shows that CSC *mailed* the notice of rejection to plaintiff on April 3; that plaintiff received the notice on April 9; and that plaintiff called CSC immediately after receiving the notice on April 9.

Zions argues that CSC's negligence in not properly reading the notice of levy is not to be imputed to Zions because CSC was its agent "for service of process, not its general agent." This argument is frivolous. CSC was Zions's agent for service of process, which is precisely the context in which CSC made its

17

negligent mistake—that is, as Zions's agent for service of process. Thus, CSC's review of the notice of levy was within the scope of its agency, and its negligence is accordingly Zions's negligence.

### C. *What is the appropriate remedy?*

Now that we have determined that CSC is negligent and that, by virtue of principles of agency law, Zions therefore had reason to know of plaintiff's notice of levy, the question then becomes: To what remedy is plaintiff entitled?

Section 701.020 entitles the judgment creditor to "the value of the judgment debtor's interest in the property," but only to the extent that the third person "fails or refuses without good cause" to deliver property to the levying officer. (§ 701.020, subd. (a).) Although the execution lien comes into being upon service of the notice of levy (§ 700.140, subd. (b)), the third person's duty to deliver comes into being "at the time of the levy *or promptly thereafter*." (§ 701.010, subd. (a), italics added.) Zions explained its internal policy of responding to notices of levy by freezing the affected funds by 4:00 p.m. on the business day after the notice of levy is served. Because CSC (and hence Zions) had "reason to know" of the levy on April 2, Zions is responsible for any withdrawals after 4:00 p.m. the next day—on April 3. Thus, Zions is not liable for the $15,000 withdrawn by Pitcock prior to 4:00 p.m. on April 3, but is liable for all of the withdrawals thereafter because Zions thereafter "fail[ed] or refus[ed] without good cause" to freeze the assets. This makes Zions liable for Pitcock's two withdrawals on April 10, which total $102,610.97. Zions may also be liable for costs and reasonable attorney fees incurred by the judgment creditor in establishing the liability. (§ 701.020, subd. (c).)

18

Plaintiff urges that Zions should be liable for *all* of the withdrawals made after she served the notice of levy on April 2; in her view, the Law requires third parties to freeze funds "immediately" rather than one business day later pursuant to what she labels an "arbitrary internal policy" of Zions. We reject plaintiff's argument. The statute requires the third person to deliver the property "at the time of [the] levy *or* promptly thereafter." (§ 701.010, subd. (a), italics added.) If the duty to deliver was, as plaintiff suggest, instantaneous upon receipt of the notice of levy, we would be writing the words "or promptly thereafter" out of the statute. As noted above, this we may not do. Financial institutions can have hundreds, thousands, if not tens of thousands, of depositors—and may receive multiple notices of levy at once in locations all around a state or the country; to expect instantaneous compliance is not realistic. Plaintiff has provided no evidence that the one-business-day delay is unreasonable given these constraints.

\*     \*     \*

Zions raises two further arguments against the imposition of liability, neither of which has merit. First, Zions argues that it may not be held liable because plaintiff did not join CSC as a defendant in her lawsuit. This argument is frivolous. "An agent is not an indispensable party in litigation between [its] principal and a third party over the subject matter of the agency." (*Writers Guild of America, West, Inc. v. Screen Gems, Inc.* (1969) 274 Cal.App.2d 367, 374.) Second, Zions argues that it would be "unfair" to hold Zions liable for CSC's negligence. We discern no unfairness. Zions made the decision whom to hire as its agent for service of process, and our holding in this case does not prejudice Zions should it seek recourse against CSC for its negligence.

19

## DISPOSITION

The order is reversed with directions.  The trial court is directed to enter an order awarding plaintiff $102,610.97, and to conduct a further hearing on whether to award costs and reasonable attorney fees.  Each party is to bear its own costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST